519 F.2d 595
 The GRINNELL CORPORATION, Plaintiff-Appellee,
and
The Chamber of Commerce of the United States of America,
Plaintiff-Appellant,
v.
Mary C. HACKETT, Director of the Department of Employment
Security of theState of Rhode Island and John J. Affleck,
Director of the Department of Socialand Rehabilitation
Services of the State of Rhode Island, Defendants-Appellees,
and
United Steelworkers of America, AFL-CIO-CLC, Intervenor-Appellee.
 No. 75-1083.
 United States Court of Appeals,
First Circuit.
 Argued April 10, 1975.
Decided July 29, 1975.
 
 Gerard C. Smetana, Chicago, Ill., with whom Jerry Kronenberg, Chicago, Ill., Alan Raywid, Burt A. Braverman, Washington, D. C., Borovsky, Smetana, Ehrlich & Kronenberg, Chicago, Ill., William F. Joy, Morgan Brown, Kearns & Joy and Richard I. Berman, Boston, Mass., were on brief, for plaintiff-appellant.
 Rudolph L. Milasich, Jr., Pittsburgh, Pa., with whom Carl B. Frankel, Pittsburgh, Pa., Warren H. Pyle, Angoff, Goldman, Manning, Pyle & Wanger, Boston, Mass., Bernard Kleiman and Kleiman, Cornfield & Feldman, Chicago, Ill., were on brief, for United Steelworkers of America, AFL-CIO, Intervenor-appellees.
 Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.
 McENTEE, Circuit Judge.
 
 
 1
 The litigation spawning this appeal was initiated to test whether Rhode Island's provision of unemployment benefits to striking workers violated federal law. On our prior consideration of the case we remanded it for a more detailed evidentiary record. Grinnell Corp. v. Hackett, 475 F.2d 449 (1st Cir.), cert. denied, 414 U.S. 858, 94 S.Ct. 164, 38 L.Ed.2d 108 (1973). That command led to further pre-trial discovery, which in turn has produced this appeal. The plaintiff-intervenors, the Chamber of Commerce of the United States and of Greater Providence ("Chamber"), were served with interrogatories by the defendant-intervenors, the United Steelworkers of America, AFL-CIO ("Steelworkers"). The principal bone of contention is Interrogatory No. 1, which reads:
 
 
 2
 "1. List the name, principal office address and Rhode Island address of each 'underlying' member business firm of the Chamber or of its affiliate, the Greater Providence Chamber of Commerce (hereafter 'Providence Chamber') who is now or who at any time relevant to this action has been an employer subject to the Rhode Island Employment Security Act. 28 R.I.G.L. § 28-42-1 et seq. (hereafter 'RIESA')."
 
 
 3
 The Chamber resisted answering this interrogatory, claiming that it sought constitutionally protected information, see NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), and that disclosure of the identities of the Chamber's member firms would subject them to violence, property destruction, and other forms of harassment and economic reprisal. On January 15, 1975, the district court ordered the Chamber to answer Interrogatory No. 1 and other contested interrogatories, but the order contained a protective provision barring use of the Chamber's disclosure for any purpose other than defense of this lawsuit.[1] The Chamber appeals this order and, in the event we find no jurisdiction over this appeal, also seeks an extraordinary writ to correct the discovery order. We dismiss the appeal for lack of jurisdiction and decline to grant the requested writ.
 
 
 4
 " A discovery order is not usually 'final' and hence not immediately appealable as the litigation in conjunction with which the discovery is sought is still pending in the district court. 28 U.S.C. § 1291." Sheehan v. Doyle, 513 F.2d 895, 898 (1st Cir. 1975). Recognizing this principle, the Chamber argues we have jurisdiction by virtue of the collateral order doctrine enunciated in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). See also Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 169-72, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Professor Moore has identified three characteristics an order must possess to satisfy the Cohen rule:
 
 
 5
 "(1) the order must be a final determination of a claim of right 'separable from, and collateral to,' rights asserted in the action; (2) it must be 'too important to be denied review,' in the sense that it 'presents a serious and unsettled question'; and (3) its review cannot, in the nature of the question that it presents, await final judgment because 'when that time comes, it will be too late effectively to review the . . . order and rights conferred . . . will have been lost, probably irreparably.' " 9 J. Moore, Federal Practice P 110.10, at 133 (2d ed. 1973), quoting Cohen.
 
 
 6
 These characteristics can be reduced to the three issues of separability, importance, and urgency.[2]
 
 
 7
 The Chamber argues that separability exists because the Chamber's members' first amendment right to associate freely is wholly distinct from the rights, issue, and injury which are at stake in the underlying action. See International Business Machines Corp. v. United States, 471 F.2d 507, 514 (2d Cir. 1972), rev'd on other issues, 480 F.2d 293 (2d Cir. 1973) (en banc), cert. and leave to file petition for extraordinary writ denied, 416 U.S. 979, 980, 94 S.Ct. 2413, 40 L.Ed.2d 776 (1974). The Steelworkers counter that separability does not exist because, in the balancing process to determine the propriety of ordering discovery, reference must be made to the issues of the underlying case to determine the relevance of the information whose disclosure has been ordered.[3] The order entered in this case is clearly not collateral in the same way as the order in Cohen, where the district court refused to apply the state statute requiring security for costs in certain derivative stockholder suits. That order did not relate in any way to the merits of the derivative action itself. See Eisen v. Carlisle & Jacquelin, supra at 172, 94 S.Ct. 2140. United States v. Schiavo, 504 F.2d 1 (3d Cir. 1974) (en banc), cert. denied, 419 U.S. 1096, 95 S.Ct. 690, 42 L.Ed.2d 688 (1975) (gag rule in criminal trial was a collateral order appealable under Cohen ). In contrast, the discovery order here is materially connected with the underlying preemption issue. See Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., 496 F.2d 800, 805 (2d Cir. 1974) (en banc).
 
 
 8
 We are not required to rest our dismissal of this appeal on the collaterality issue alone. In Cohen the Court stressed the importance of the issue it was called upon to decide:
 
 
 9
 "(W)e do not mean that every order fixing security is subject to appeal. Here it is the right to security that presents a serious and unsettled question. If the right were admitted or clear and the order involved only an exercise of discretion as to the amount of security . . . appealability would present a different question." 337 U.S. at 547, 69 S.Ct. at 1226.
 
 
 10
 The Second Circuit has repeatedly held that an important factor bearing on the application of Cohen is whether decision of the issue appealed will settle the matter not simply for the case in hand but for many others. E. g., Ronson Corp. v. Liquifin Aktiengesellschaft, 508 F.2d 399, 401-02 (2d Cir. 1974); International Business Machines Corp. v. United States, 480 F.2d 293, 298 (2d Cir. 1973) (en banc), cert. and leave to file petition for extraordinary writ denied, 416 U.S. 979, 980, 94 S.Ct. 2413, 40 L.Ed.2d 776 (1974); Weight Watchers of Philadelphia, Inc. v. Weight Watchers International, Inc., 455 F.2d 770, 773 (2d Cir. 1972); Donlon Industries, Inc. v. Forte, 402 F.2d 935, 937 (2d Cir. 1968); American Express Warehousing, Ltd. v. Transamerica Ins. Co., 380 F.2d 277, 280 (2d Cir. 1967).[4] The rationale behind these cases is to avoid putting such a large crack in the final judgment dam that the ensuing flood of appeals will engulf the appellate courts. See Borden Co. v. Sylk, 410 F.2d 843, 845-46 (3d Cir. 1969). "Once the collateral order doctrine is applied to orders for disclosure by parties, it is difficult to suggest any limitation on the right to appeal such an order over a claim of privilege." 4 J. Moore, Federal Practice P 26.83(6), at 57 (Supp.1973).
 
 
 11
 Appellant argues in its reply brief that this appeal presents an important and unsettled question: whether the first amendment privilege recognized in NAACP v. Alabama, supra, must be accorded to an association whose membership consists of corporations as distinguished from one whose members are natural persons. If we assume that this is indeed an unsettled question, that concession gives little succor to the Chamber's cause, for the district court did not bottom its discovery order on a rejection of the Chamber's position. The basis for the order was that the information sought was "highly relevant" and that the Chamber had waived its first amendment protection by putting harm to its members in issue in the suit. Whether these decisions were right or wrong, they do not present the important question the Chamber asserts.
 
 
 12
 The third Cohen condition, urgency, concerns whether denying review would leave the party seeking it "powerless to avert the mischief of the order." Perlman v. United States, 247 U.S. 7, 13, 38 S.Ct. 417, 419, 62 L.Ed. 950 (1918). Here, the Chamber has not shot the last arrow in its quiver, since it can refuse to comply and seek review from the sanction, if any, imposed for that refusal. See Gialde v. Time, Inc., 480 F.2d 1295, 1300 (8th Cir. 1973); Carr v. Monroe Mfg. Co., 431 F.2d 384, 387 (5th Cir. 1970), cert. denied sub nom. Aldridge v. Carr, 400 U.S. 1000, 91 S.Ct. 456, 27 L.Ed.2d 451 (1971). The Supreme Court has recently styled it "a familiar procedure" to advise one's client "to resist and risk a contempt citation, thereby allowing precompliance appellate review." Maness v. Meyers, 419 U.S. 449, 95 S.Ct. 584, 593, 42 L.Ed.2d 574 (1975). And earlier cases echo the same theme. See United States v. Ryan, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); Alexander v. United States, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906). If we treat these cases as providing guidance regarding the content of the urgency standard, they suggest that the Chamber's claim that review must be afforded now lest meaningful review be forever lost must fail absent a contempt adjudication.
 
 
 13
 The Chamber could secure review of a criminal contempt finding. See Union Tool Co. v. Wilson, 259 U.S. 107, 111, 42 S.Ct. 427, 66 L.Ed. 848 (1922). If the district court certified it as final under Fed.R.Civ.P. 54(b), the Chamber could also appeal immediately from an order dismissing its complaint as the sanction for noncompliance. United States v. Procter & Gamble Co., 356 U.S. 677, 680-81, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). Admittedly there is less certainty as to whether an order adjudicating a party in civil contempt would be appealable, see Fox v. Capital Co., 299 U.S. 105, 57 S.Ct. 57, 81 L.Ed. 67 (1936); Hodgson v. Mahoney, 460 F.2d 326, 328 (1st Cir.), cert. denied, 409 U.S. 1039, 93 S.Ct. 519, 34 L.Ed.2d 488 (1972),[5] but even if this possibility satisfies the urgency requirement, that is insufficient in light of the failure to meet the other two prerequisites of the collateral order doctrine.
 
 
 14
 We can treat the petition for a writ of mandamus and/or prohibition briefly. The District of Columbia Circuit recently disposed of a similar petition with an opinion that also answers the claim presented in this case. National Right to Work Legal Defense v. Richey, 510 F.2d 1239 (D.C.Cir.1975), cert. denied, --- U.S. ---, 95 S.Ct. 2631, 44 L.Ed.2d 671 (1975).[6] That comprehensive opinion reviews the bases for mandamus and we will not repeat its analysis here. Traditional mandamus is available to correct a clear usurpation of judicial power, but no such excess is present in this case. Nor is "supervisory" mandamus appropriate, for the district judge has not exhibited any persistent or deliberate disregard for limiting rules. See Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957). "Advisory" mandamus is also not appropriate, because it is available only where the question presented "is likely to confront a number of lower court judges in a number of suits before appellate review is possible . . . ." National Right to Work Legal Defense v. Richey, supra at 1243. The most that can be said in favor of issuing an extraordinary writ here is the equitable consideration that the question may for practical reasons evade review otherwise. However, we have already indicated in our consideration of Cohen that the Chamber may challenge the order through disobedience. Thus we are not persuaded that our refusal to grant the writ will effectively eliminate meaningful appellate review because the harm feared, disclosure, will be irremediable. We add in this connection that even the sanction of civil contempt might be subject to review by mandamus, as opposed to appeal, in part because of its potentially nonreviewable status otherwise. See generally H. M. Hart & H. Wechsler, The Federal Courts and the Federal System 1570-71 (2d ed. P. Bator, P. Mishkin, D. Shapiro & H. Wechsler 1973). But the present posture of the case does not make it a member of "the limited class of cases where denial of immediate review would render impossible any review whatsoever . . . ." United States v. Ryan, supra, 402 U.S. at 533, 91 S.Ct. at 1582. We therefore perceive no extraordinary circumstances requiring issuance of the writ.
 
 
 15
 Appeal dismissed and petition denied.
 
 
 
 [1]
 The protective order reads as follows:
 "Defendant-Intervenor United Steelworkers of America, AFL-CIO-CLC will not make use of the list of member firms which the Chamber of Commerce of the United States of America and the Greater Providence Chamber of Commerce must provide in answer to interrogatories or disclose the identity of such member business firms except for the sole purpose of defending this lawsuit and for no other purpose."
 
 
 [2]
 There is authority for recognizing a fourth requirement, namely, finality. See Rodgers v. United States Steel Corp., 508 F.2d 152, 159 (3d Cir. 1975), petition for cert. filed, 43 U.S.L.W. 3637 (U.S. May 27, 1975) (No. 74-1483). This requirement means that the district court's disposition of the matter for which collateral order treatment is sought must be final rather than provisional. This analysis does not add much to Professor Moore's statement of the prerequisites, however, because if the urgency requirement is satisfied the finality condition is necessarily met as well. It is tautological that if the district court's disposition of the issue is provisional rather than final, then appellate review of the specific issue is not yet necessary to prevent irreparable loss of the right asserted. Conversely, satisfaction of the finality rule would not necessarily entail satisfaction of the urgency requirement
 
 
 [3]
 The Chamber's rejoinder to this argument is that if it is accepted "no discovery order involving the First Amendment right of freedom of association would ever be immediately appealable, even where such information was in fact privileged, since in performing the balancing test required under NAACP (v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963),) and Bates (v. City of Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960),) a court must always consider the relevance of the sought after information to the main case." We recognize the possibility that the information sought to be discovered might be so minimally relevant and its discovery so grossly intrusive into protected rights that the order could be realistically viewed as a collateral one. See generally Eisen, supra, 417 U.S. at 171, 94 S.Ct. 2140. This is not such a case
 
 
 [4]
 In Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., supra, the Second Circuit stated that the importance condition of Cohen is met in appeals from orders refusing to disqualify an attorney. If "importance" has the meaning given it in the Second Circuit cases cited in the text, it is difficult to understand how every order refusing to disqualify is "important." But the Silver Chrysler result may reflect an overriding concern for judicial economy and for avoiding any interim appearance of impropriety. Such exceptional considerations are absent here
 
 
 [5]
 The Alexander, Cobbledick, and Ryan cases do not distinguish between civil and criminal contempt in asserting that appeal would lie from contempt. But those cases may be distinguishable if the appellants there are viewed as strangers to the main proceedings rather than parties to the litigation
 
 
 [6]
 The Supreme Court denied a stay of the district court's disclosure order in the Richey case. See --- U.S. ---, 95 S.Ct. 1549, 43 L.Ed.2d 770 (1975)