637 F.2d 1
 Fed. Sec. L. Rep. P 97,800, Bankr. L. Rep. P 67,739,
Bankr. L. Rep. P 67,804
In re CONTINENTAL INVESTMENT CORPORATION, Debtor.
Monte J. Wallace and Neil W. Wallace, Appellants.
 No. 80-1362.
 United States Court of Appeals,
First Circuit.
 Argued Sept. 4, 1980.
Decided Oct. 31, 1980.
 
 Arthur F. Mathews, Washington, D. C., with whom John H. Pickering, Robert B. McCaw, Wilmer & Pickering, Washington, D. C., William F. Macauley, Joanne M. Neale, and Craig & Macauley, Boston, Mass., were on brief, for appellants.
 Michael K. Wolensky, Associate Gen. Counsel, Washington, D. C., with whom Ralph C. Ferrara, Gen. Counsel, John P. Sweeney, Asst. Gen. Counsel, Anne C. Flannery, Sp. Counsel, Theodore S. Bloch, and Harlan W. Penn, Washington, D. C., were on brief for appellee, S. E. C.
 Peter Gruenberger, New York City, with whom Harvey R. Miller, Bruce R. Zirinsky, Irwin H. Warren, and Weil, Gotshal & Manges, New York City, were on brief for appellee, O.C. Associates.
 Daniel M. Glosband, Boston, Mass., with whom Richard T. D'Elia, New Hyde Park, N. Y., and Goldstein & Manello, Boston, Mass., were on brief for appellee, Paul Lazzaro, Trustee of Continental Inv. Corp.
 Henry L. Goodman, Shelly Rothschild, and Zalkin, Rodin & Goodman, New York City, on brief for appellee, Chemical Bank.
 Before COFFIN, Chief Judge, BOWNES, Circuit Judge, WYZANSKI, Senior District Judge*.
 COFFIN, Chief Judge.
 
 
 1
 Appellants Monte and Neil Wallace, the majority stockholders of Continental Investment Corporation (CIC), seek to take an interlocutory appeal from an order denying their motion to disqualify from CIC's Chapter X reorganization proceedings the law firm representing a substantial creditor of the bankrupt.
 
 
 2
 The disqualification motion focused on the role played by Marvin Jacob in connection with the reorganization proceedings. As head of the Bankruptcy Division of the SEC's New York Regional Office, Jacob had represented the SEC in its ultimately successful efforts to gain a transfer of the CIC proceedings from Chapter XI to Chapter X. Jacob left the SEC shortly thereafter, and became a partner in the New York law firm of Weil, Gotshal & Manges (WG&M). WG&M had as a client O.C. Associates, a general partnership which prior to Jacob's arrival had begun to purchase a significant portion of CIC's outstanding debentures. Recognizing that Jacob was personally disqualified from any work on the CIC matter, and in an attempt to avoid the imputation of that disqualification to the firm, WG&M undertook "screening" procedures designed to keep Jacob from any contact with or income from CIC matters. Appellants moved to disqualify WG&M from the proceedings upon learning of Jacob's position at the firm, contending that while they alleged no actual impropriety the circumstances were prejudicial to them and required disqualification. The district court denied the motion, and appellants bring this interlocutory appeal.
 
 
 3
 The first question we must consider is whether we have jurisdiction to hear such an appeal. Because we conclude that we do not, and because we find no reason sufficient to justify our reaching the merits of the motion in the absence of jurisdiction, we do not consider the substantive standards to govern attorney disqualification motions in this circuit.
 
 
 4
 We start from the general rule that interlocutory orders are not appealable in federal courts. Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); see 28 U.S.C. § 1291 (providing courts of appeals with jurisdiction over "all final decisions of the district courts"). This final judgment rule serves "a strong congressional policy against piecemeal review, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals." United States v. Nixon, 418 U.S. 683, 690, 94 S.Ct. 3090, 3098, 41 L.Ed.2d 1039 (1974); see 9 Moore's Federal Practice P 110.06-110.07 (2d ed. 1975).
 
 
 5
 Appellants press two grounds as supporting an exception to this principle in the case before us. The first, unique to disqualification motions made in the course of bankruptcy litigation and apparently a question of first impression, is that disqualification motions fall within the special appellate jurisdiction provided over "proceedings in bankruptcy" by section 24(a) of the Bankruptcy Act of 1898, 11 U.S.C. § 47(a) (repealed 1978). The second, applicable to all denials of disqualification motions and an issue upon which every other circuit has ruled, is that such orders are appealable under the collateral order doctrine first established in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We address each ground in turn.
 
 The Bankruptcy Act
 
 6
 Section 24(a) of the Bankruptcy Act of 1898 (the Bankruptcy Act), 11 U.S.C. § 47(a) (repealed 1978), grants the courts of appeals jurisdiction over appeals from interlocutory orders entered in "proceedings in bankruptcy."[1] Appellants urge that this "clear statutory language" compels a holding that denials of disqualification motions made during bankruptcy litigation are immediately appealable. But taken in its entirety, the language of § 24(a) is anything but clear. For the section turns on a distinction between "proceeding(s) in bankruptcy", which generally are immediately appealable, and "controvers(ies) arising in a proceeding in bankruptcy", which are not, see In re Lloyd, Carr & Co., 614 F.2d 17, 19 (1st Cir. 1979); 2 Collier on Bankruptcy §§ 24.12, 24.28 (14th ed. 1976)-a distinction which has been characterized as "not always simple",[2] "hairline thin",[3] and "obscure and indefensibly confusing."[4] Nor do we find the familiar definition of those terms to shed much light on the question before us, a novel and unusual issue whose contours clearly were not anticipated by those invoking that general definition.[5] Rather, we find most compelling what we perceive to be the policy rationale underlying the special appealability of "proceedings", well described by Judge Hufstedler in In re Brissette, 561 F.2d 779, 782 (9th Cir. 1977), as follows:
 
 
 7
 "The esoteric draftsmanship of Section 24(a) does not completely obscure the draftsmen's intent that decisions involving interpretation of fundamental provisions of the Bankruptcy Act should be subject to interlocutory appeal. Due to the peculiar nature of bankruptcy proceedings, certain interlocutory decisions may effectively determine the ultimate outcome or finally resolve rights and duties of parties in a manner not susceptible to meaningful review on appeal from the final judgment .... Resolution of such issues will often wind up the entire litigation. If these consequences do not flow from permitting an interlocutory appeal, appeals in this field should be as firmly restricted as those in other kinds of civil litigation."
 
 
 8
 See Cope v. Aetna Finance Co. of Me., 412 F.2d 635, 639 (1st Cir. 1969) ("The critical question is whether the ... order was determinative of the rights of the parties."); In re Durensky, 519 F.2d 1024, 1028 (5th Cir. 1975) (same).
 
 
 9
 Applying this rationale to the question before us, we think it plain that no fundamental provision of the Bankruptcy Act, no decision effectively determining the rights of any party, indeed no matter at all peculiar to bankruptcy administration is presented. To the contrary, attorney disqualification motions can and do arise in any type of litigation whatsoever-their invocation in bankruptcy proceedings is only accidentally related to the Bankruptcy Act. Were we to have any substantial doubt on this matter, it would nonetheless be resolved in favor of finding a nonappealable controversy by virtue of the preference for such treatment in close cases recognized in In re Lloyd, Carr, supra, 614 F.2d at 19-20.[6]
 
 The Collateral Order Doctrine
 
 10
 Orders which are not final dispositions of an action may be immediately appealed in any type of litigation if they satisfy the criteria of the collateral order exception to the final judgment rule first enunciated in Cohen v. Beneficial Loan Corp., supra, 337 U.S. at 541, 69 S.Ct. at 1223. See Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978). This court has recently analyzed the Cohen doctrine as follows:
 
 
 11
 "Four requisites of appealability under this exception can be gleaned from the Cohen opinion and the cases applying it. The order must involve: (1) an issue essentially unrelated to the merits of the main dispute, capable of review without disrupting the main trial; (2) a complete resolution of the issue, not one that is 'unfinished' or 'inconclusive'; (3) a right incapable of vindication on appeal from final judgment; and (4) an important and unsettled question of controlling law, not merely a question of the proper exercise of the trial court's discretion." United States v. Sorren, 605 F.2d 1211, 1213 (1st Cir. 1979).
 
 
 12
 See Note, The Appealability of Orders Denying Motions for Disqualification of Counsel in the Federal Courts, 45 U.Chi.L.Rev. 450, 454-55 (1978). These requisites may be summarized as separability, finality, urgency, and importance. See Grinnell Corp. v. Hackett, 519 F.2d 595, 596 (1st Cir.), cert. denied sub nom. Chamber of Commerce v. United Steelworkers of America, 423 U.S. 1033, 96 S.Ct. 566, 46 L.Ed.2d 407 (1975).
 
 
 13
 We are apparently the last circuit to consider the applicability of these criteria to orders denying disqualification motions.[7] Following a period in which it was "generally agreed" that such orders were immediately appealable, Schloetter v. Railoc, 546 F.2d 706, 709 (7th Cir. 1976), several circuits, apparently faced with a "deluge" of such appeals, Community Broadcasting of Boston, Inc. v. FCC, 546 F.2d 1022, 1027 (D.C.Cir.1976), have reconsidered their earlier positions. Pointing to the frequent use of such appeals as tools for harassment and delay, these courts have overruled prior decisions and held denial orders non-appealable. See Armstrong v. McAlpin, 625 F.2d 433 (2d Cir. 1980) (en banc); In re Multi-piece Rim Products Liability Litigation, 612 F.2d 377 (8th Cir. 1980), petition for cert. granted sub nom. Firestone Tire & Rubber Co. v. Risjord, 446 U.S. 934, 100 S.Ct. 2150, 64 L.Ed.2d 786 (1980); Melamed v. ITT Continental Baking Co., 592 F.2d 290 (6th Cir. 1979). Several other circuits, however, have at present continued to stand by earlier decisions holding such orders appealable. See, e. g., United States v. Miller, 624 F.2d 1198 (3d Cir. 1980); MacKethan v. Peat, Marwick, Mitchell & Co., 557 F.2d 395 (4th Cir. 1977); Woods v. Covington County Bank, 537 F.2d 804 (5th Cir. 1976). But see P Stone, Inc. v. Koppers Corp., 631 F.2d 24 (3d Cir. 1980). We now address each of the Cohen criteria in turn.
 
 
 14
 Our discussion of appellants' claim under the Bankruptcy Act makes clear that the first element, separability, is met here; as noted, a ruling on a disqualification motion is clearly collateral to the merits of any bankruptcy issue. It is almost equally clear that the requirement of finality is also met; while the trial judge retained the right to reconsider the motion in light of later developments, he had effectively rejected the claim as proferred. But the urgency and importance criteria "are not so easily disposed of." Armstrong v. McAlpin, supra, 625 F.2d at 438.
 
 
 15
 Whether a claim satisfies the test of urgency, i. e., whether it would be "incapable of vindication on appeal from final judgment", United States v. Sorren, supra, 605 F.2d at 1213, turns on whether irreparable harm would result to appellants, not from the district court order itself, but from a delay in obtaining appellate review of it. See Gardner v. Westinghouse Broadcasting Corp., 559 F.2d 209, 212 (3d Cir. 1977), aff'd, 437 U.S. 478, 98 S.Ct. 2451, 57 L.Ed.2d 364 (1978). Thus, contrary to appellants' assertion, any harm that may have been caused by the challenged representation thus far is irrelevant to the question of appealability. Projected harms to government investigatory efforts, to public confidence in the courts and the SEC, and to other litigants and clients are similarly inapplicable to an analysis of appellants' ability to secure adequate review at a later date.
 
 
 16
 Rather, the putative urgency of this appeal hinges on a single prospect: that if interlocutory appeal is denied and an appeal taken from a final judgment, this court may decide that the district court's denial of the motion was in error, necessitating retrial of a complex corporate reorganization proceeding. We find this possibility insufficient to support a finding of urgency. We note first that the likelihood of retrial of the significant portion of the proceedings already conducted is unaffected by the timing of appellate review. More importantly, however, even if that conclusion were thought to indulge in bootstrap logic in light of our earlier denial of a stay in these proceedings, we reach the same conclusion as to the portions yet uncompleted. Our decisions have consistently declined to allow the prospect of possibly substantial litigation burdens, see Lamphere v. Brown Univ., 553 F.2d 714, 717 (1st Cir. 1977), or even of relitigation itself, see In re Sylvania Elec. Prods., 220 F.2d 423, 425 (1st Cir. 1955), to circumvent the policy against piecemeal review. As we noted in Lamphere,
 
 
 17
 "If the hardships of trial are routinely held to implicate a separate interest reviewable under the collateral order doctrine, the distinction between interlocutory and final orders would be seriously undermined, if not eliminated." 553 F.2d at 717.
 
 
 18
 Thus, we conclude that appellant's claim is not "urgent" for purposes of the collateral order doctrine.[8]
 
 
 19
 We reach the same conclusion as to importance, at least with regard to the general run of disqualification motions. Importance in this context refers to the scope of precedential value-to whether a case presents "an important and unsettled question of controlling law", United States v. Sorren, supra, 605 F.2d at 1213, a decision as to which "will settle the matter not simply for the case at hand but for many others", Grinnell Corp. v. Hackett, supra, 519 F.2d at 597. We agree with the position intimated in dictum in Grinnell that on this view of importance "it is difficult to understand how every order refusing to disqualify is important." Id. at 597-98 n. 4. Indeed, the Second Circuit, whose earlier rule Grinnell questioned, gave as a principal reason for its recent reversal of that rule the fact that "most disqualification motions involve primarily factual, rather than legal, determinations." Armstrong v. McAlpin, supra, 625 F.2d at 439. Subsequent experience has rendered ironic Grinnell's suggestion that a concern for judicial economy might justify a finding of importance, as numerous courts have decried the apparently frequent use of such appeals as tools of harassment and delay. See id.; Melamed v. ITT Continental Baking Co., supra, 592 F.2d at 295; Community Broadcasting of Boston, Inc. v. FCC, supra, 546 F.2d at 1027.[9] We join in their conclusion that denials of disqualification motions as a class raise significant unsettled legal questions too rarely to bring them within the Cohen exception.
 
 
 20
 Bulwarking this conclusion is our view of the rationale supporting that exception. While we recognize that occasional disqualification motions may raise legitimately novel and "important" questions of law, we do not see why in the absence of some showing of irreparable harm even those cannot be adequately reviewed on appeal from a final judgment. For both the policy considerations underlying Cohen and the internal logic of its criteria suggest that the possibility of irreparable harm resulting from a delay in appellate review is the dispositive criterion of interlocutory appealability. This court has already commented that it is "tautological" that "if the urgency requirement is met the finality condition is necessarily met as well", since no irreparable loss can occur while a district court order remains provisional. Grinnell Corp. v. Hackett, supra, 519 F.2d at 596 n. 2. The same, it seems, is true of separability: no irreparable harm can result from the determination of an issue if that issue is closely interwoven with the merits of an ultimate issue not yet decided. Indeed, we may even say that urgency is not only necessary to reviewability but is a sufficient precondition of reviewability, since proof of finality or separability may not involve any urgency while a showing of urgency necessarily entails both finality and separability. Both separability and finality, then, can best be viewed as relevant facets of urgency rather than as discrete elements.
 
 
 21
 Importance has been said to be relevant to a determination of appealability on two grounds. To the extent importance comprises precedential significance for other cases in an "unsettled" area, it seems irrelevant to the determination of when appellate review is appropriate in a case under consideration. See Armstrong v. McAlpin, supra, 625 F.2d at 450-51 (Mulligan, J., dissenting) ("Having found no post- Cohen Supreme Court authority which has turned upon this "public importance" factor or indeed has even mentioned it, I am now compelled to conclude that it is not a Cohen requirement."); cf. n. 10 infra. To the extent that importance refers to whether an issue presents a "question of ... law, not merely a question of ... discretion", United States v. Sorren, supra, 605 F.2d at 1213, it may be relevant in two ways. First, insofar as it suggests that reversal is more likely as to questions of law than to those of discretion, it provides another indication of the likelihood of harm to the party seeking early review. Second, it may reflect an efficiency concern legitimately counterposed to the efficiency concerns motivating the final judgment rule: pure questions of controlling law material to an action may better be decided by suspending trial to gain appellate guidance than by proceeding to completion in the face of substantial uncertainty on the issue. But precisely such concerns underlie the certification procedure provided by 28 U.S.C. § 1292(b), and any case in which they are significant should come up on appeal by that method.[10] As a result, a court of appeals should hear an interlocutory appeal under Cohen to settle a question of controlling law only where it finds the district court's denial of certification to be unreasonable. Since certification involves a relatively simple and discrete question, such cases should be few. In sum, the central focus of a Cohen analysis must be on the likelihood of irreparable harm resulting from a delay, a focus which is in policy terms the natural counterweight to the factors supporting the final judgment rule. Thus, we conclude that even were a particular disqualification motion to raise important questions of law, no interlocutory appeal would lie from the denial of such a motion in the absence of a showing that irreparable harm might otherwise result.
 
 
 22
 Although we hold denials of disqualification motions not immediately appealable as of right, we note three significant respects in which our holding does not affect the availability of immediate review of disqualification motions, in each of which we join the overwhelming majority of other circuits. First, we do not reach the appealability of orders granting disqualification motions. We note that other circuits have held such orders appealable, concluding both that the possibility of irreparable harm to the moving party is significantly greater and that the risk of tactical harassment is significantly reduced in such cases.[11] See Armstrong v. McAlpin, supra, 625 F.2d at 440-41; In re Multi-piece Rim Products Liability Litigation, supra, 612 F.2d at 378. Second, if a denied disqualification motion "raises an important, unresolved question of law, the movant may seek certification under 28 U.S.C. § 1292(b) ...." Community Broadcasting of Boston, Inc. v. FCC, supra, 546 F.2d at 1028 n. 40; see Armstrong v. McAlpin, supra, 625 F.2d at 438. Third, "(i)n the exceptional case, the movant may petition this court for a writ of mandamus under 28 U.S.C. § 1651 ...." Community Broadcasting of Boston, Inc. v. FCC, supra, 546 F.2d at 1028; Armstrong v. McAlpin, supra, 625 F.2d at 438.[12]
 
 
 23
 Finally, we decline to follow the lead of the several circuits that have recently gone on to decide the merits of a denied disqualification motion before them in the case in which they held such denials generally not appealable. See Armstrong v. McAlpin, supra; In re Multi-piece Rim Products Liability Litigation, supra; Melamed v. ITT Continental Baking Co., supra. Normally, of course, a finding by a court of appeals that it lacks jurisdiction over a class of appeals would lead it to dismiss a pending appeal within that class. The cases just cited point to two reasons in support of an exception to that rule, and the reasons are alluring: the opportunity to give district courts in the circuit guidance on an often muddled area of substantive law, and the opportunity to utilize the judicial resources already invested in consideration of the merits of the disqualification motion. But, perhaps because other courts have broken the ground on this issue, and perhaps because we have been faced with so few such cases in this circuit, we do not feel warranted at this juncture in breaching the strong policy against the issuance of advisory opinions. In addition, the policy against piecemeal review of actions would be frustrated in the very case before us were we to rule on the merits of the motion. We thus believe it the wiser course, and perhaps more significantly the course mandated by the statute as we view it, that we not reach the question of disqualification standards presented in this case.
 
 
 24
 Appeal dismissed.
 
 
 
 *
 From the District of Massachusetts, sitting by designation
 
 
 [1]
 This appeal is governed by the Bankruptcy Act of 1898 because the reorganization petition was filed on April 30, 1976, prior to the October 1, 1979 effective date of the Bankruptcy Reform Act of 1978, Pub.L.No. 95-598 § 402, 92 Stat. 2682. Under § 403 of the Reform Act, all matters pending at its effective date continue to be subject to the provisions of the Bankruptcy Act. Since the Reform Act eliminates the special jurisdiction provided by § 24(a), the question addressed in this section of the opinion is unlikely to recur
 
 
 [2]
 In re Lloyd, Carr, supra, 614 F.2d at 19
 
 
 [3]
 United Kingdom Mutual S.S. Ass'n v. Liman, 418 F.2d 9, 10 (2d Cir. 1969)
 
 
 [4]
 In re Duplan Corp., 591 F.2d 139, 144 (2d Cir. 1978) (Friendly, J.), quoting In re Brissette, 561 F.2d 779, 781 (9th Cir. 1977)
 
 
 [5]
 The traditional statement of the distinction is clearly, and understandably, directed to matters having some inherent relationship to bankruptcy litigation:
 "As a general rule, 'proceedings' are those matters of an administrative character, including questions between the bankrupt and his creditors which are presented in the ordinary course of the administration of the bankrupt's estate. 'Controversies,' on the other hand, are usually described as matters which arise in the course of the bankruptcy proceedings and which are not mere steps in the ordinary administration of the bankrupt, but which present distinct and separable issues between the trustee and adverse claimants concerning the right and title to the bankrupt's estate." In re Durensky, 519 F.2d 1024, 1027 (5th Cir. 1975); see 2 Collier on Bankruptcy, supra, §§ 24.12, 24.48.
 
 
 [6]
 Appellants also argue that appellate jurisdiction in Chapter X reorganization proceedings, conferred by section 121 of the Bankruptcy Act, 11 U.S.C. § 521 (repealed 1978) is "even broader" than the expanded scope of such jurisdiction in proceedings in bankruptcy generally. Because we consider the non-appealability of disqualification orders under § 24(a) to be clear and qualitative, and because we believe essentially the same policy considerations to motivate § 121, we do not find this argument, even if sound, to dictate a different result under § 121. Appellants further cite Bankruptcy Rule 10-210(a)(1) as supporting appellate jurisdiction; that rule is one of standing and has no bearing on the scope of our jurisdiction. Rule Bankr.Proc. Rule 10-210(a)(1), following 11 U.S.C.A
 
 
 [7]
 We note that the Supreme Court has recently granted certiorari to decide this question. Firestone Tire & Rubber Co. v. Risjord, 446 U.S. 934, 100 S.Ct. 2150, 64 L.Ed.2d 786 (1980)
 
 
 [8]
 Other circuits have consistently held a judge's refusal to recuse himself, arguably a far more significant and troubling decision, fully reviewable on appeal from final judgment and thus not immediately appealable. See In re Corrugated Container Antitrust Litigation, 614 F.2d 958, 960-61 (5th Cir. 1980), and cases cited there
 
 
 [9]
 We commend the lawyers of this circuit for the fact that we are apparently the only circuit not to have experienced such use of interlocutory appeals. See Note, supra, 45 U.Chi.L.Rev. at 451 n. 6
 
 
 [10]
 Indeed, the reference to importance in Cohen itself may reflect the fact that § 1292(b) was not enacted at that time. See Armstrong v. McAlpin, supra, 625 F.2d at 439 n. 12
 
 
 [11]
 In light of the equal frequency with which grants and denials of disqualification motions might be expected to present unsettled questions of controlling law, this asymmetry further supports the proposition advanced above that "importance" in that sense is not a significant criterion of appealability under the collateral order doctrine. Cf. Armstrong v. McAlpin, supra, 625 F.2d at 441, n. 15 ("We recognize" that asymmetry, but "are willing to endure whatever appearance of inconsistency" it gives rise to)
 
 
 [12]
 We note once again that "this court may, in its discretion, treat an attempted appeal from an unappealable order as a petition for a writ of mandamus ....", United States v. Sorren, supra, 605 F.2d at 1215, and we do so here to avoid the possibility of further delay in this already protracted litigation. Because we find no "clear error" with regard to any "new and important question of law", id., we decline to issue a writ