**Richard N. SCOTT and the Washington Hospital Center Corporation, Appellants,**

v.

**Arthur JACKSON, as the Personal Representative of the Estate of Willard M. Jackson, et al., Appellees.**

**Nos. 90–843, 90–881 and 90–900.**

District of Columbia Court of Appeals.

Argued April 25, 1991.
Decided Aug. 23, 1991.

---

David A. Levin, with whom David A. Roling was on the brief, for appellant Richard N. Scott.

J. Joseph Barse, with whom James F. Jordan and David B. Stratton were on the brief, for appellant The Washington Hosp. Center.

Richard J. Mudd, with whom Leslie A. King was on the brief, for appellees.

John S. Hoff, filed a brief amicus curiae, on behalf of the District of Columbia Hosp. Ass'n.

Michael C. Maher and Jeffrey Robert White filed a brief amicus curiae, on behalf of the Ass'n of Trial Lawyers of America.

Before FARRELL and WAGNER, Associate Judges, and GALLAGHER, Senior Judge.

FARRELL, Associate Judge:

The issue we must decide is whether this court has jurisdiction to review pretrial orders of the trial court requiring discovery of information under the "extraordinary necessity" exception to the District of Columbia's statutory peer review privilege governing certain medical records and reports. D.C.Code § 32–505(a) (1988). We hold that the orders, lacking requisites of finality, may not be appealed at this time.

## I.

These are consolidated appeals from discovery orders directing appellant Washington Hospital Center Corporation to produce the personnel file of appellant Dr. Richard N. Scott along with records of Washington Hospital Center's peer review of Dr. Scott's surgical performance relating to his medical treatment of Mrs. Willard M. Jackson and other patients. Dr. Scott appeals from both the order to provide appellees, plaintiffs below, with his personnel file and the order to produce the peer review documents pertaining to his treatment of Mrs. Jackson and others. Washington Hospital Center appeals only the order compelling production of the records of its peer review committee's investigation of Dr. Scott.

The discovery orders were entered in a medical malpractice action that arose from Mrs. Jackson's death in 1980 during open heart surgery performed at Washington Hospital Center by Dr. Scott and Dr. Arthur Lee.[1] Appellees contend that Mrs. Jackson died as a result of a "massive hemorrhage caused by a perforated aorta" and that Dr. Scott's and Dr. Lee's "medical negligence during Mrs. Jackson's heart operation on August 26, 1980 was the direct cause of the injury which then caused her death." Appellees contend further that Mrs. Jackson's death certificate, signed by Dr. Scott, listing the cause of her death as "left ventricular failure," as well as Washington Hospital Center's official medical record, do not reflect the actual circumstances of her death and that appellants

1. Dr. Lee, a defendant in the malpractice action    below, has not appealed the discovery orders.

fraudulently concealed the true cause of death. Appellees allege that they brought their malpractice suit against appellants and Dr. Lee in October 1989 only after an article appeared in the October 26, 1988 issue of the *Washington Post* suggesting that Mrs. Jackson's death was the result of medical negligence.[2] Appellants vigorously dispute the claim that medical negligence caused Mrs. Jackson's death or that there was any form of cover-up of the cause of her death. Both appellants claim that the District's statutory "peer review privilege"[3] protects the records of Washington Hospital Center's internal investigation of Dr. Scott from disclosure. Dr. Scott contends that the documents contained in his Washington Hospital personnel file are similarly sheltered by the peer review privilege.

The trial court was persuaded that plaintiffs had made the requisite showing of "extraordinary necessity" to overcome the qualified privilege. The court reasoned:

> This suit is based on events that took place nearly ten years ago. Plaintiffs' contentions—that the 1980 operating room death of Mrs. Jackson is attributable to substandard care by the surgeons involved and that subsequent actions by defendants resulted in plaintiffs' not discovering this at the time—is not one that may be rejected out of hand on the present record. Since 1980 evidence has been lost or destroyed. It appears that Dr. Scott's own records no longer exist, the Hospital Center's original documentation of Mrs. Jackson's surgery no longer exists, and portions of Dr. Scott's personnel record have been destroyed. Moreover, witnesses have died (defen-

dant Dr. Fouty died during the pendency of this case) or become otherwise unavailable, and memories have faded. In the circumstances of this case, given the length of time between Mrs. Jackson's surgery and plaintiffs' filing suit, the peer review materials appear to be the most reliable evidence available of the events surrounding Mrs. Jackson's death.

On the defendants' motion for reconsideration and clarification, the court amplified its reasoning:

> The defendant has misconstrued the basis of the Court's ruling. It is not the passage of ten years since the operation on Mrs. Jackson that is exceptional; rather it is the Hospital Center's actions that are extraordinary. First, the Hospital availed itself of the peer review process in effecting the withdrawal of the operating privileges of Dr. Scott, whom it believed (rightly or wrongly) was operating below acceptable surgical standards. Then the Hospital entered into an agreement with that surgeon to withhold from everyone else the basis for its decision to withdraw his privileges.[12] And finally, in carrying out that agreement, the Hospital removed from Dr. Scott's personnel file the pertinent records reflecting its concerns for patient care that led up to the suspension of his operating privileges. These are the circumstances the Court found "extraordinary."[13] When they are coupled with the nearly ten years since the operation on Mrs. Jackson and the inevitable fading of memory[14] and misplacement of records, the Court was satisfied that "extraordinary necessity" warranting disclosure of

some documents from his personnel file and to keep the details of his suspension confidential.

**2.** The article, one in a series examining what the newspaper called "the burgeoning use of court secrecy in civil lawsuits," also reported that Dr. Scott's surgical privileges at Washington Hospital Center had been suspended following an internal review, that Dr. Scott had brought suit against Washington Hospital Center regarding the suspension of his surgical privileges, and that Dr. Scott and Washington Hospital Center had settled the suit, with Dr. Scott agreeing to relinquish his surgical privileges and Washington Hospital Center consenting both to remove

**3.** The relevant portion of D.C.Code § 32–505(a) provides: "Absent a showing of extraordinary necessity, the minutes, analyses, preliminary and final findings and reports of a medical utilization review committee, peer review committee, medical staff committee or tissue review committee shall not be subject to discovery or admissible into evidence in any civil or administrative proceeding." D.C.Code § 32–501 defines these various committees.

the peer review records had been demonstrated. Those records are virtually contemporaneous with the incident in suit and, as the Court stressed in its ruling, appear to be "the most reliable evidence available."

12. Including not merely the patients' families, but other hospitals equally interested in that information. See Plaintiffs' Motion to Open Peer Review Records, Exhibit # 6: Wednesday, October 26, 1988, Washington Post at p. 2 (Montgomery General Hospital not given access to the review committee's files concerning Dr. Scott).

13. As Circuit Judge Spottswood Robinson observed, writing for the Court in *Emmett v. Eastern Dispensary and Casualty Hospital,* 130 U.S.App.D.C. 50, 54, n. 19, 396 F.2d 931, 935 n. 19 (1967), "We have found no case precisely in point, apparently because it is not often that an attending physician and a hospital would withhold information concerning a patient's last illness and death from his close relatives,...."

14. Plaintiffs' counsel represents that, having deposed the major participants in the operative procedure, "everyone so far has stated that they have no independent recollection whatsoever of the events that occurred ten years ago." Plaintiffs' Opposition to the Washington Hospital Center's Motion to Amend, etc., filed July 10, 1990, at p. 12.

The court also clarified the scope of its ruling:

> So there is no doubt, the Court directs the Hospital Center to disclose the minutes, analyses, preliminary and final findings and reports of any peer review committee that investigated the surgical competence of Dr. Scott in 1981 or 1982, as well as any primary health records or any oral or written statements submitted to or presented before such peer review committee. The Hospital Center shall delete the names of all patients other than Mrs. Jackson, as well as any references by which those other patients can

be identified (*e.g.,* family names, addresses, etc.). If there is a question about the appropriateness of any redaction, a party may ask the Court for *in camera* examination of the material and for a ruling whether the information should be deleted or disclosed.

The court denied appellants' request for certification of the issue as an interlocutory order subject to appeal under D.C.Code § 11–721(d) (1989), a ruling appellants do not challenge on appeal.

## II.

Appellants attack each step in the trial court's reasoning as factually or legally flawed, arguing in essence that it dilutes the "extraordinary necessity" exception in a manner that portends routine discovery of peer review records in future lawsuits. Moreover, because similar discovery requests are pending in the Superior Court in other litigation arising partly from the *Washington Post* article, *supra* note 2, appellants argue that interlocutory review of the trial court's order in this case is imperative to give needed guidance in construing this exception to an important statutory privilege. We appreciate fully appellants' concern that breach of the peer review privilege not become anything even approaching the norm in medical malpractice lawsuits; in particular we have concerns about the scope of the discovery ordered by the trial court. *See* pages 529–530, *infra.* But even if the issue before us involved the threatened breach of an *absolute* privilege rather than the qualified privilege enacted by the legislature, we would still have to consider whether review of the trial court's ruling at this time falls within our limited jurisdictional mandate.[4]

4. We deal here with an evidentiary *privilege* enacted by the legislature, not with a claim of immunity from lawsuit by either defendant. *Cf. Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411

(1985). D.C.Code § 32–503 does immunize members of the peer review and related committees enumerated in note 3, *supra,* from liability for damages or equitable relief under specified circumstances, but that statute has no application here.

We ordered the parties to address that issue supplementally, and we now consider it.

### A.

This court has jurisdiction to review "all final orders and judgments of the Superior Court of the District of Columbia." D.C.Code § 11–721(a)(1).[5] An order is final if it "dispose[s] of the whole case on its merits so that the court has nothing remaining to do but to execute the judgment or decree already rendered." *Trilon Plaza Co. v. Allstate Leasing Corp.*, 399 A.2d 34, 36 (D.C.1979) (quoting *McBryde v. Metropolitan Life Insurance Co.*, 221 A.2d 718, 720 (D.C.1966)). *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373–74, 101 S.Ct. 669, 673–74, 66 L.Ed.2d 571 (1981); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978).[6] The finality requirement "means that 'a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits.'" *Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424, 429–30, 105 S.Ct. 2757, 2759–61, 86 L.Ed.2d 340 (1985) (quoting *Firestone Tire*, 449 U.S. at 374, 101 S.Ct. at 673).

The United States Supreme Court has consistently affirmed the finality rule, pointing to the harm that would result if frequent interruption of ongoing litigation by an appellate court were permitted. Immediate appeal impedes the administration of justice by allowing multiple appeals from the rulings commonly made in ongoing litigation to halt the resolution of just claims. *Cobbledick v. United States*, 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940). Regular review before final judgment would bring "unreasonable disruption, delay, and expense" as well as "undermine the ability of [trial] judges to supervise litigation." *Richardson–Merrell*, 472 U.S. at 430, 105 S.Ct. at 2760. The requirement of a final judgment "promotes efficient judicial administration while at the same time emphasizing the deference appellate courts owe to the [trial] judge's decisions on the many question of law and fact that arise before judgment." *Id.* (citing *Firestone Tire*); *Flanagan v. United States*, 465 U.S. 259, 263–64, 104 S.Ct. 1051, 1053–54, 79 L.Ed.2d 288 (1984). And the need for a final judgment before review is proper insures against ineffective and duplicative "piecemeal appellate review of trial court decisions which do not terminate the litigation." *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265, 102 S.Ct. 3081, 3082, 73 L.Ed.2d 754 (1982).

■ Discovery orders generally do not qualify as final orders and so are not separately appealable. *United States v. Harrod, supra* note 6, 428 A.2d at 31, 33–34; *Corporacion Insular de Seguros v. Garcia*, 876 F.2d 254, 256 (1st Cir.1989); *United States v. Sciarra*, 851 F.2d 621, 627–28 (3d Cir.1988). As merely one step in ongoing litigation, they "typically bespeak their own interlocutory character." *Id.; Borden Co. v. Sylk*, 410 F.2d 843, 845 (3d Cir. 1969).[7] And typically the trial judge has "broad discretion" in deciding whether a

---

**5.** Under D.C.Code § 11–721(a)(2) and § 11–721(a)(3), the court also has jurisdiction over some interlocutory appeals. These statutory exceptions to the final order or final judgment requirement have no application to the discovery orders before us now.

**6.** Even though the federal statute confines review under 28 U.S.C. § 1291 (1988) to "final decisions of the district courts," while the District of Columbia statute provides for this court's jurisdiction over "final orders and judgments," D.C.Code § 11–721(a)(1), despite this small variation in language we have "generally treated the two statutes in a similar fashion." *United States v. Harrod*, 428 A.2d 30, 31 n. 1 (D.C.1981) (en banc).

**7.** An exception exists where the discovery request is the only litigation pending before the

trial court. *Sciarra*, 851 F.2d at 628–29 (quoting 8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2006 (1970)); *cf. Barrick Group, Inc. v. Mosse*, 849 F.2d 70 (2d Cir.1988) (where two district courts are involved, discovery order is appealable only where the district court that issued the order is in a different circuit than the district court in which the primary litigation is pending). This exception does not contravene the finality rule because appellate review of such a discovery order would not interrupt ongoing proceedings in the trial court that issued the discovery order. *Sciarra* at 628–29 (citing *Sheehan v. Doyle*, 513 F.2d 895 (1st Cir.), *cert. denied*, 423 U.S. 874, 96 S.Ct. 144, 46 L.Ed.2d 106 (1975)).

Our court has applied this exception in *Plough, Inc. v. National Academy of Sciences*, 530 A.2d 1152 (D.C.1987), where we considered,

discovery order should be entered. *Brune v. I.R.S.*, 274 U.S.App.D.C. 89, 93, 861 F.2d 1284, 1288 (1988); *see White v. Washington Metro. Area Transit Auth.*, 432 A.2d 726, 728–29 (D.C.1981).[8]

## B.

■ Although appellate courts traditionally show great reluctance to intrude upon pending litigation, the Supreme Court has recognized a narrow but important exception to the final order rule under the principles of *Cohen v. Beneficial Industrial Loan Corporation*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The *Cohen* exception permits interlocutory appeals from decisions falling into "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, [and which are] too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546, 69 S.Ct. at 1225–26. This court follows the *Cohen* doctrine. *Horton v. United States*, 591 A.2d 1280 (D.C.1991); *United States v. Harrod, supra* note 6. Like the Supreme Court, however, we have emphasized that the requirements of the doctrine are difficult to satisfy. *Stein v. United States*, 532 A.2d 641, 643 (D.C.1987), *cert. denied*, 485 U.S. 1010, 108 S.Ct. 1477, 99 L.Ed.2d 705 (1988). All three of the elements of the collateral order test must be met before review is permitted:

> To come within this narrow exception … a trial court order must, at a minimum, meet three conditions. First, it must conclusively determine the disputed question; second, it must resolve an important issue completely separate from the merits of the action; third, it must be effectively unreviewable on appeal from a final judgment.

*Id.* (quoting *Flanagan v. United States, supra*, 465 U.S. at 265, 104 S.Ct. at 1055) (internal quotation marks omitted).

"A major characteristic of the denial or granting of a claim appealable under *Cohen's* 'collateral order' doctrine is that 'unless it can be reviewed before [the proceedings terminate], it can never be reviewed at all.'" *Mitchell v. Forsyth*, 472 U.S. 511, 525, 105 S.Ct. 2806, 2814–15, 86 L.Ed.2d 411 (1985) (citations omitted). The doctrine allows appeal only of "orders affecting rights that will be irretrievably lost in the absence of an immediate appeal." *Richardson–Merrell, supra*, 472 U.S. at 431, 105 S.Ct. at 2761.

The instant appeals fail at this critical threshold. Appellants contend that awaiting final judgment in this case is futile because the damage will be accomplished—the privilege will have been breached. We may assume with appellants, without deciding, that compliance with the discovery orders in this case would result in damage to the medical peer review process that cannot be cured (or sufficiently contained) by post-judgment reversal of the orders. Even so, "in the rare case where appeal after final judgment will not cure an erroneous discovery order," immediate appeal is not permitted because "a party may defy the order, permit a contempt citation to be entered against him, and challenge the order on direct appeal of the contempt ruling." *Firestone Tire*, 449 U.S. at 377, 101 S.Ct. at 675. We have applied that principle to parties, *Horton v. United States, supra*, and nonparties, *United States v. Harrod, supra* note 6. In this case, although appellants have been ordered to disclose the disputed materials, they have not yet failed to comply with the order and been found in contempt or subjected to other sanctions under Super.Ct.Civ.R. 37(b)(2).

Appellants respond, however, that precisely *as parties* they would not be allowed interlocutory appeal even of a civil con-

without discussing the question of jurisdiction, the request by the National Academy of Sciences for a protective order with respect to documents sought by Plough, Inc., in connection with a products liability action then being litigated in the California Superior Court.

**8.** This court will overturn the decision of a trial judge regarding whether discovery ought to be

compelled only after a showing that "there has been an abuse of discretion which is prejudicial." *White*, 432 A.2d at 729 (quoting *Snyder v. Maryland Casualty Co.*, 187 A.2d 894, 895 (D.C.1963)).

tempt order, but would have to await final judgment despite the threat of a monetary sanction or incarceration. *See Fox v. Capitol Co.,* 299 U.S. 105, 107, 57 S.Ct. 57, 58, 81 L.Ed. 67 (1936); *Doyle v. London Guarantee & Accident Co.,* 204 U.S. 599, 607–08, 27 S.Ct. 313, 315–16, 51 L.Ed. 641 (1907); *Duell v. Duell,* 85 U.S.App.D.C. 78, 82–83, 178 F.2d 683, 687–88 (1949).[9] This area of the law is unsettled. *See Grinnell Corp. v. Hackett,* 519 F.2d 595, 598 (1st Cir.), *cert. denied,* 423 U.S. 1033, 96 S.Ct. 566, 46 L.Ed.2d 407 (1975). We need not decide, however, whether the imposition of civil contempt would enable appellants to appeal interlocutorily because, as we recognized in *Horton, supra,* in the case of parties the trial court has other sanctions available which appellants may elect to endure rather than disclose the disputed materials. Super.Ct.Civ.R. 37(b)(2).

The trial judge has demonstrated full awareness of his authority to impose these sanctions rather than contempt.[10] Indeed, at oral argument in this court counsel for the Hospital Center conceded, based on his familiarity with the proceedings, that the most likely course the court would choose for disobedience of the discovery orders is sanctions under Rule 37. It is well settled that such sanctions, no matter how damaging to a litigant's case, are not appealable until after final judgment. *See Burleson v. American Security Bank, N.A.,* 461 A.2d 458 (D.C.1983); *Chromaglass Corp. v. Ferm,* 500 F.2d 601 (3d Cir.1974) (en banc).[11] Nor is the cost of undergoing a trial whose outcome might be thought foreordained by sanctions a relevant considera-

tion, for the fact that the trial court's ruling "may be erroneous and may impose additional litigation expense is not sufficient to set aside the finality requirements imposed by Congress." *Richardson–Merrell,* 472 U.S. at 436, 105 S.Ct. at 2764.

There is an additional reason why appellants' ability to hold the peer review privilege intact may not be impaired, at least not to the extent appellants fear, by dismissal of these appeals. A critical feature they find objectionable in the discovery order is the required disclosure of information concerning Dr. Scott's surgical procedures on patients *other* than Mrs. Jackson performed after her death. Appellants contend that the trial court has "conclusively determine[d this] disputed question," *Flanagan,* 465 U.S. at 265, 104 S.Ct. at 1055, but the record is not so plain. In his order clarifying the scope of the discovery order the judge stated, "If there is a question about the appropriateness of any redaction [from the disclosed documents], a party may ask the Court for *in camera* examination of the material and for a ruling whether the information should be deleted or disclosed." Appellants dismiss this remark as evincing a willingness to reconsider the scope of the discovery in only the narrowest respects such as the deletion of names and addresses, but not the details or evaluation of other operations performed by Dr. Scott. We are not convinced, however, that the judge has ruled out the intermediate step of *in camera* disclosure to consider the need for admitting records of operations on others besides Mrs. Jackson.[12] In its brief the Hospital Center argues that an order breaching

---

**9.** The same would not be true in the case of criminal contempt. *Doyle,* 204 U.S. at 607, 27 S.Ct. at 315; *In re Cys,* 362 A.2d 726, 728–29 (D.C.1976). There are additional exceptions, which we have no occasion to consider here, to the rule requiring a contempt order before interlocutory appeal of a discovery order is permitted. *See United States v. Nixon,* 418 U.S. 683, 691–92, 94 S.Ct. 3090, 3099–3100, 41 L.Ed.2d 1039 (1974); *Perlman v. United States,* 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918).

**10.** *See* Memorandum and Order of July 11, 1990, at 12 n. 24 (noting that "[e]ven were the Hospital Center to refuse to make disclosure, an appealable order would not necessarily follow," citing Super.Ct.Civ.R. 37(b)(2)).

**11.** Of course, certain orders imposing sanctions may be appealable as final orders, e.g., an order granting judgment by default against the disobedient party under Super.Ct.Civ.R. 37(b)(2)(C). *See, e.g., Vernell v. Gould,* 495 A.2d 306 (D.C.1985).

**12.** *See United States v. Zolin,* 491 U.S. 554, 568, 109 S.Ct. 2619, 2629, 105 L.Ed.2d 469 (1989) (affirming value of *in camera* inspection as means of resolving issues of evidentiary privilege and "recognizing that disclosure of allegedly privileged materials to the district court for purposes of determining the merits of a claim of privilege does not have the legal effect of terminating the privilege").

the privilege on grounds of "extraordinary necessity" must, by definition, be narrowly tailored and that peer review records concerning other operations have too little relevance to possible negligence by Dr. Scott in the present case to outweigh the institutional damage from their disclosure. These are not insubstantial arguments, but we do not read the court as having foreclosed them in connection with a request for *in camera* examination of the records. At the very least, our inability to say that the judge has rejected once and for all arguments as to the extraordinary need to produce such records confirms our judgment that his orders lack the requisite finality.

### C.

In light of this conclusion, it is not strictly necessary for us to decide whether appellants satisfy the remaining prong of the *Cohen* test, *viz.*, whether these appeals would resolve "an important issue completely separate from the merits of the action." *Flanagan*, 465 U.S. at 265, 104 S.Ct. at 1055. However, we make the following observation. Appellants assert that the peer review issue has undisputable importance because this court has not heretofore been called on to define the limits of the "extraordinary necessity" exception to the privilege, which in turn affects a vital self-regulating function of the District's medical institutions. We think it evident, however, that any disapproval of the trial court's application of the exception in this case would be case-specific and provide only limited guidance to trial judges in future settings in which the exception is invoked. The fundamental issue of whether there is to be a medical peer review privilege, and whether it may be overcome, has already been resolved by the legislature. The meaning of "extraordinary necessity" can only be filled in by a case-by-case application of the standard to individual facts. In other words, it is altogether doubtful whether application of the exception to any particular facts involves "a 'serious and unsettled' question of law that review by this court will lay to rest" once and for all. *United States v. Harrod, supra* note 6, 428 A.2d at 32.

For the foregoing reasons, these appeals must be dismissed for lack of jurisdiction.

*So Ordered.*