**Kent Bruce CRANE, Appellant,**

v.

**Catherine Ann CRANE, Appellee.**

**No. 90–FM–1620.**

District of Columbia Court of Appeals.

Argued Oct. 8, 1991.

Decided Sept. 29, 1992.

---

Stephen Gray, with whom John A. Ordway, Jr., Washington, D.C., was on the brief, for appellant.

Donald T. Cheatham, Fairfax, Va., for appellee.

Before TERRY, WAGNER, and KING, Associate Judges.

PER CURIAM:

The parties to this litigation (hereafter "the wife" and "the husband") were married in 1976, executed a "Voluntary Separation and Property Settlement Agreement" in 1985, and were eventually divorced in 1987. Thereafter they remained in controversy over certain aspects of the separation agreement and divorce decree relating to money and property. Finally, the wife filed a motion asking the court to hold the husband in contempt because of his alleged failure to comply with various court orders, and a second motion seeking the issuance of subpoenas against an attorney, Charles Bruce, Esquire, who allegedly helped the husband conceal some of his assets by establishing a trust on the Isle of Man.[1]

The court entered an order on December 3, 1990, granting both motions, finding the husband in civil contempt but imposing no sanctions. Instead, the order directed him to appear in court on January 23, 1991, to show cause "why he should not be arrested and detained at that time until he has purged himself of contempt by paying [the wife] all monies he owes her ... or by showing good cause why he cannot do so...."[2] The order also authorized the wife to depose Mr. Bruce "for the limited purpose of ascertaining the facts concerning the creation, location, and contents of a trust on the Isle of Man," and further authorized the issuance of "appropriate subpoenas" to Mr. Bruce, "including a subpoena *duces tecum* for documents and records in possession of Mr. Bruce relating to said trust, for the purpose of effectuating Mr. Bruce's testimony at said deposition...." From that order the husband brings this appeal.

We hold, preliminarily, that the husband cannot challenge in this appeal the prior award of support *pendente lite* to the wife because any such challenge is barred by the doctrine of *res judicata.* We further hold that neither part of the trial court's December 3 order is final and appealable, and hence we dismiss this appeal for lack of jurisdiction.

## I

More than six and a half years ago, appellee Catherine Ann Crane (the wife) fired the first salvo in what has become a long-running legal battle between these two former spouses. On February 26, 1986, she moved for a temporary restraining order and a preliminary injunction to prevent appellant Kent Bruce Crane (the

---

**1.** The Isle of Man lies in the Irish Sea between Britain and Ireland. "It is not part of the United Kingdom but a crown possession (since 1828) administered by the British Home Office, with a considerable degree of self-government." Encyclopedia Britannica, 6 Micropædia 548 (15th ed. 1981).

**2.** The husband did not appear on January 23. Thereafter, on February 25, the court entered an order directing that a bench warrant be issued for his arrest. The order further provided that the husband, "if found within the jurisdiction or otherwise detained for return to this jurisdiction, shall be brought before the [court] forthwith for a determination of the terms of his commitment to the District of Columbia Department of Corrections pursuant to [the finding of contempt]." Finally, the order stated that the husband "may purge himself of this civil contempt of court" at any time by paying the amount due and owing to the wife.

It does not appear that any further order was issued with respect to the contempt finding. As far as we can determine, the husband has not been brought before the court or made any payment to purge himself of the contempt. It has been alleged from time to time during the pendency of these proceedings that the husband now resides in Nepal, apparently for business reasons.

husband) from removing assets from the District of Columbia.[3] Under a separation agreement which the couple had executed in 1985, the husband was required to pay the wife $12,500 every quarter for the next four years, and to secure those payments with collateral in the form of real estate or personal property. When the husband sold some real estate and sent the proceeds to the Government of Belize to pay a business debt, the wife sought injunctive relief to prevent him from removing any more assets from the District of Columbia.

Once she had obtained the injunction,[4] the wife moved for financial support *pendente lite*. The trial court granted her request in an order dated November 5, 1986.[5] The husband noted an appeal from that order (appeal No. 87–217).[6] Almost a year later, on September 11, 1987, the court entered a judgment of absolute divorce. In its decree the court expressly held that the 1985 separation agreement "is valid and should be enforced." It ruled that the wife was "entitled to specific performance of the agreement" and ordered the husband to pay the wife the $75,000 arrearage he then owed under the agreement, as well as the remaining payments as they became due.[7]

The husband noted an appeal (No. 87–1403) from the judgment of divorce. That appeal was consolidated with his earlier appeal (No. 87–217) from the order granting *pendente lite* support. When the husband filed a brief which failed to address the *pendente lite* order, the wife moved to dismiss the appeal insofar as it related to that order. After the husband filed a response, the wife's motion was denied. *Crane v. Crane*, Nos. 87–217 & 87–1403, order filed November 9, 1988.[8] The consolidated appeals were argued before a division of this court, which affirmed both trial court orders—the *pendente lite* support order of November 5, 1986, and the judgment of absolute divorce of September 11, 1987—in an unpublished memorandum opinion and judgment. *Crane v. Crane*, Nos. 87–217 & 87–1403 (D.C. October 16, 1989).[9]

While the prior appeals were pending, the wife filed a motion asking the trial court to hold the husband in contempt for violation of the preliminary injunction and for failure to pay her the sums specified in the separation agreement. She also moved

3. The motion was granted, and a temporary restraining order was issued, on February 28, 1986.

4. The temporary restraining order was extended, by consent of the parties, until the court could rule on the motion for a preliminary injunction. On July 3, 1986, the court granted the motion and issued a preliminary injunction which remains in effect to this day.

5. The award of *pendente lite* support was made retroactive to May 15, 1986, the date on which the motion for such support was filed. The court's order included a money judgment against the husband in the amount of $11,960, with interest from the date of the order, which he was directed to pay on or before November 7, 1986. Further payments of $2,390 per month were ordered to be made on the fifteenth day of every month, beginning November 15, 1986.

6. The notice of appeal in No. 87–217 stated that the issues to be raised on appeal would be "whether incorrect standard was applied by trial court in determining (a) eligibility of plaintiff for pendente lite support and/or (b) the quantum of support if plaintiff was eligible for such relief."

7. In a footnote the court added, however, that "[c]redits, if any, for *pendente lite* payments or attachments cannot be computed on the present record."

8. In his reply brief in No. 87–217, the husband asserted that the *pendente lite* order had been made moot by the issuance of the final decree of divorce, saying, "The wife's assumption that the Superior Court's November 5, 1986, interlocutory order has some remaining vitality after the Superior Court's September [11], 1987, final decision is erroneous."

9. Both parties admit in their briefs in the instant case that the issue of *pendente lite* support was not addressed at oral argument in the prior appeals. This court's October 1989 opinion discusses only the validity of the separation agreement. It also states that "the judgment appealed from ... is affirmed." Since there were, however, two trial court "judgments" before this court for review—the *pendente lite* support order and the final divorce decree—we construe the opinion as necessarily affirming both. We note that the husband did not file a petition for rehearing on the ground that the *pendente lite* issue had been overlooked by the court. *See* D.C.Ct. App.R. 40(b).

to compel the husband's attorney, Charles Bruce, to make himself available for deposition so that he might be questioned about the alleged creation of a trust on the Isle of Man after the trial court had enjoined the husband from moving his assets out of the District of Columbia. The husband filed an opposition, admitting that he had failed to make the payments but asserting that his financial situation had changed for the worse so that it was now impossible for him to comply with the judgment. He also argued that Mr. Bruce could not be subpoenaed to testify about any alleged trust because his testimony was barred by the attorney-client privilege.

After a hearing,[10] the trial court granted both of the wife's motions in its order of December 3, 1990. The court found the husband in contempt and ordered him to show cause why he should not be arrested for failure to comply with its earlier orders. The court also held that Mr. Bruce could be compelled to cooperate in discovery because the attorney-client privilege "does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime,"[11] nor did it "protect communications which the client should reasonably expect to entail publication." The husband appeals, challenging the trial court's alleged reaffirmation of its earlier award of *pendente lite* support to the wife, the contempt citation, and the order authorizing the wife to take the deposition of Charles Bruce. Because none of the husband's claims are properly before this court, we dismiss this appeal.

II

■ Although the trial court's order of December 3, 1990, from which this appeal is taken, does not award any monetary relief to the wife, the husband asserts nevertheless that the court's finding of contempt based on his failure to comply with earlier orders, including (apparently) one or more orders directing him to pay *pendente lite* support, is inconsistent with the 1985 separation agreement. Because the issue of whether the separation agreement precluded the award of *pendente lite* relief to either party was raised in the prior appeal, appellant's present claim is barred by the doctrine of *res judicata*.

In general, "the doctrine of claim preclusion, or *res judicata*, prevents the same parties from relitigating the same claim, including any issue that either was or might have been raised in the first proceeding." *Rhema Christian Center v. District of Columbia Board of Zoning Adjustment*, 515 A.2d 189, 192–193 (D.C.1986) (citations omitted); *accord, e.g., Cromwell v. County of Sac*, 94 U.S. (4 Otto) 351, 352, 24 L.Ed. 195 (1877). Principles of *res judicata* preclude a party from raising claims which he or she has already raised, *or had the opportunity to raise*, in an earlier proceeding. "[W]hether a party wins or loses relief in the initial action, the final judgment embodies all of a party's rights arising out of the transaction involved, and a party will be foreclosed from later seeking relief on the basis of issues which might have been raised in the prior action." *Stutsman v. Kaiser Foundation Health Plan, Inc.*, 546 A.2d 367, 370 (D.C.1988) (citations omitted).

The husband challenged the trial court's award of *pendente lite* support in the earlier appeal, No. 87–217, before this court. The correctness of the *pendente lite* order was expressly identified in the husband's notice of appeal as an issue to be raised in that appeal. While our memorandum opinion of October 16, 1989, does not specifically discuss the issue of *pendente lite* support, that issue was addressed by the parties in their briefs, and also in the wife's motion to dismiss and the husband's response. Regardless of what this court's opinion did or did not say, the husband certainly had an opportunity in the earlier appeal to assert his claim that the award of such relief was foreclosed by the separation agreement. That opportunity was suf-

---

10. The transcript of the hearing is not in the record.

11. This is known as the "crime-fraud exception" to the attorney-client privilege. *See United States v. Zolin*, 491 U.S. 554, 563, 109 S.Ct. 2619, 2626, 105 L.Ed.2d 469 (1989).

ficient to bar his present argument under the doctrine of *res judicata*.[12]

## III

■ The husband contends that the trial court erred in holding him in contempt when it disregarded his alleged inability to pay his ex-wife what he owes her because of financial hardship. He also claims that none of his assets were removed from the District of Columbia after the court issued the restraining order and injunction forbidding such transfers. These arguments, rejected by the trial court when it held the husband in contempt, are not properly before us because the trial court has not yet imposed any contempt sanction on the husband. On the contrary, the order directs the husband to appear before the court on a future date to show cause "why he should not be arrested and detained at that time until he has purged himself of contempt...." The mere finding of contempt, unaccompanied by a sanction, is not an appealable order; as to the contempt, this appeal is premature.[13]

■ This court has consistently held that "where the trial court has imposed no remedial or coercive sanction conditioned upon compliance with [a] contempt order, an adjudication of civil contempt lacks the certainty, specificity, and finality essential for judicial review." *D.D. v. M.T.*, 550 A.2d 37, 42–43 (D.C.1988), citing *Ashcraft v. Ashcraft*, 318 A.2d 284, 285 (D.C.1974), and *In re Cys*, 362 A.2d 726, 728–729 (D.C. 1976). Even an order to show cause why a person should not be arrested, issued along with a contempt citation, "is not a final order and is therefore not appealable." *Eisenberg v. Eisenberg*, 357 A.2d 396, 402 (D.C.1976). An adjudication of civil contempt therefore cannot be appealed unless and until a sanction has been imposed.

In the instant case, no sanction has been imposed by the trial court.[14] Upon finding the husband in contempt, the court gave him an opportunity to show cause why he should not be punished. The husband apparently has still not shown such cause, and the trial court has still not imposed a coercive sanction. For this reason, the instant appeal, insofar as it purports to be taken from the finding of contempt, must be dismissed.

## IV

■ The husband's final claim on appeal is that the trial court erred in ruling that his communications with Mr. Bruce concerning the creation of an alleged overseas trust were not protected by the attorney-client privilege. He maintains that his communications with Mr. Bruce were indeed privileged and were not subject to disclosure under either the crime-fraud exception or the publication exception to the privilege. Once again, we cannot consider the husband's claim because it is prematurely made: the December 3 order is not appealable because it merely authorizes the issuance of a subpoena and permits the wife to take Mr. Bruce's deposition.

12. It could also (or instead) be argued that the husband's present challenge to the *pendente lite* award is barred by the law of the case. "Under the law of the case doctrine, appellate courts generally adhere to a ruling made on a prior motion or appeal.... That doctrine, however, is discretionary. It 'merely expresses the practice of courts generally to refuse to reopen what has been decided, [and is not] a limit to their power.'" *Kleinbart v. United States*, 604 A.2d 861, 866 (D.C.1992) (citations omitted). We need not choose between *res judicata* and law of the case as a basis for declining to consider the husband's argument, for we are satisfied that it is foreclosed under either doctrine.

13. With certain limited exceptions not pertinent here, only "final orders" of the Superior Court are appealable to this court. D.C.Code § 11–721(a)(1) (1989).

14. The only other order of the trial court relating to the contempt adjudication is the order of February 25, 1991, to which we refer in note 2, *supra*. That order, like its December 3 predecessor, does not impose any sanction on the husband. Rather, it directs that the husband be brought before the court so that a sanction may be determined, unless in the meantime he purges himself of the contempt. Thus the February 25 order cannot retroactively make the December 3 order appealable. *Cf. Robinson v. Howard University*, 455 A.2d 1363, 1365–1366 n. 1 (D.C.1983).

The Supreme Court has consistently held that a subpoena or discovery order directed to a non-party witness is not "final," and therefore not appealable. *United States v. Ryan,* 402 U.S. 530, 532–533, 91 S.Ct. 1580, 1581–1582, 29 L.Ed.2d 85 (1971); *Cobbledick v. United States,* 309 U.S. 323, 327, 60 S.Ct. 540, 542, 84 L.Ed. 783 (1940); *Alexander v. United States,* 201 U.S. 117, 120–122, 26 S.Ct. 356, 357–358, 50 L.Ed. 686 (1906). This court, following that line of cases, has held likewise:

> [A] witness may obtain review of a subpoena or a discovery order only after he persists in his refusal to comply and is sentenced for contempt of court. The merits of the order will then be reviewable in an appeal from the contempt citation, a clearly severable proceeding.

*United States v. Harrod,* 428 A.2d 30, 31 (D.C.1981) (en banc). These cases make clear that a subpoena to a non-party witness cannot be appealed until the witness has failed to comply and has been sanctioned by the trial court; *a fortiori,* the mere authorization that such a subpoena be issued is not appealable either. The rule is grounded in the sound policy of requiring final trial court adjudication before a claim is eligible for appellate review. *See Cobbledick, supra,* 309 U.S. at 325, 60 S.Ct. at 541.

The subpoena authorized by the trial court has not yet been disobeyed; indeed, as far as we can discern from the record, it has not even been issued. Mr. Bruce may eventually invoke the privilege when deposed by appellee about the alleged Manx trust. If he does, it will then be up to the trial court, in the first instance, to decide whether the desired information is privileged. We cannot consider that question unless Mr. Bruce fails to comply with the subpoena and the trial court then imposes a contempt sanction on him. Moreover, when and if that happens, the only proper appellant will be Mr. Bruce, not Mr. Crane. *See United States v. Harrod, supra,* 428 A.2d at 31.

### V

In sum, none of the husband's claims in this appeal are properly before this court.

The doctrine of *res judicata* precludes us from considering the validity or correctness of the earlier order awarding *pendente lite* support to the wife. The trial court's finding of contempt and its order authorizing the issuance of a subpoena to Mr. Bruce and the noting of his deposition are unappealable, non-final orders. The husband's appeal from the order of December 3, 1990, is therefore

*Dismissed for lack of jurisdiction.*

TERRY, Associate Judge, concurring:

I join without reservation in the opinion of the court, but I think it should go a little further. From the present record, it does not appear that the trial court had sufficient information before it to rule definitively on the husband's claim of privilege or, specifically, the applicability of the crime-fraud exception to the privilege. Since this matter will undoubtedly come before the trial court again, I offer a few general observations in the hope of expediting future proceedings in this case, which has already consumed a great deal of judicial time and effort.

To be protected by the attorney-client privilege, communications between a lawyer and a client must concern legal advice; business advice or similar assistance is not privileged. "Generally, an attorney who serves as a business agent to a client may not assert the attorney-client privilege, because no confidential relationship attaches." *United States v. Huberts,* 637 F.2d 630, 640 (9th Cir.1980), *cert. denied,* 451 U.S. 975, 101 S.Ct. 2058, 68 L.Ed.2d 356 (1981). If an attorney merely transfers assets for a client or provides other ministerial services, those transfers or other activities are not protected by the privilege. Thus, in *United States v. Davis,* 636 F.2d 1028, 1033 n. 3 (5th Cir.), *cert. denied,* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981), the court held that documents "pertaining to the establishment and maintenance or other transactions with any trust fund, [including] establishment and maintenance of the trust," were not shielded from disclosure by the attorney-client privilege.

The court reasoned that such documents did not fall within the definition of "legal advice": "[d]ocuments establishing trust funds ... are not privileged because in their creation the attorney acts merely as a scrivener." *Id.* at 1044 n. 19.

*Davis* and the other cases distinguishing business dealings from legal advice at least suggest that any communication between the husband and Mr. Bruce concerning the establishment of a trust on the Isle of Man may not be privileged. At the outset, therefore, the trial court must determine whether Mr. Bruce was merely assisting the husband in the conduct of his business affairs or whether he was providing legal advice. If the communications between them simply pertained to the establishment of a trust, Mr. Bruce may well have been acting "merely as a scrivener," so that the privilege would not apply.

On the other hand, if the husband consulted Mr. Bruce for his opinion on whether the establishment of such a trust would violate the trial court's injunction, he was soliciting legal advice. Even then, however, the communications at issue may be disclosable under the so-called crime-fraud exception to the privilege. Under that exception, the privilege "does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." *United States v. Zolin,* 491 U.S. 554, 563, 109 S.Ct. 2619, 2626, 105 L.Ed.2d 469 (1989) (citation omitted).

Nevertheless, before the crime-fraud exception may be invoked, the party seeking its application "must first make a prima facie showing of a violation sufficiently serious to defeat the privilege." *In re Sealed Case,* 244 U.S.App.D.C. 11, 15, 754 F.2d 395, 399 (1985) (footnote omitted); *see Clark v. United States,* 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933) ("To drive the privilege away, there must be 'something to give colour to the charge;' there must be '*prima facie* evidence that it has some foundation in fact' " (citation omitted)). This *prima facie* showing of crime or fraud need not rise to the level of

dispositive proof, but it must have at least some substance. "To invoke the 'crime-fraud' exception to the privilege, it is not necessary to prove beyond a reasonable doubt that the attorney or client [was] attempting or did commit a crime or fraud. However, more is necessary than mere allegations of wrongdoing...." *Coleman v. American Broadcasting Cos.,* 106 F.R.D. 201, 207 (D.D.C.1985).

Before the trial court can find that the crime-fraud exception applies in the instant case, the wife must make a *prima facie* showing of crime or fraud. If this case were properly before us on the merits, I would hold that the court erred in assuming the existence of the Manx trust, as it did in its December 3 order (in Conclusion of Law No. 3). The court cannot simply accept the wife's allegations and assume the existence of the alleged trust; the law requires at least a *prima facie* showing that it does exist and that it was established for an improper purpose.

If the wife cannot make the necessary showing without the subpoenaed documents, the court may—either *sua sponte* or on the wife's motion—conduct an *in camera* examination of any documents pertaining to the alleged Manx trust. Other trial courts have followed this course, and have found in the subpoenaed documents themselves *prima facie* evidence of a crime or fraud. *See In re Sealed Case,* 219 U.S.App.D.C. 195, 217, 676 F.2d 793, 815 (1982) ("In appropriate cases the subpoenaed material itself may provide *prima facie* evidence of a violation" (footnote omitted)). Before the court may take that step, however, the wife "must present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the [crime-fraud] exception's applicability.... [That] threshold showing ... may be met by using any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged." *United States v. Zolin, supra,* 491 U.S. at 574–575, 109 S.Ct. at 2632.[1] If such a

---

1. Elsewhere in its opinion, the Supreme Court made clear that the "threshold" was fairly low:

We therefore conclude that a lesser evidentiary showing is needed to trigger *in camera*

showing is made, the court may require the husband or Mr. Bruce to make the documents available for *in camera* inspection, a practice expressly approved by the Supreme Court in *Zolin* and "well established in the federal courts." *Id.* at 568–569, 109 S.Ct. at 2628–2629. But if such a showing is not made, the crime-fraud exception to the privilege will probably be inapplicable.

WAGNER, Associate Judge, concurring in part and dissenting in part:

I join in the decision of the court dismissing appellant's appeal from the trial court's order of December 3, 1990, for lack of jurisdiction. To the extent that appellant challenges in this appeal the underlying *pendente lite* support award entered by the trial court on November 5, 1986, I also agree with the majority that review by this court is barred by issue preclusion principles.[1] However, appellant also argues that any calculation of sums he may owe appellee under the parties' Separation Agreement ("the Agreement")[2] must include as a credit sums accrued or paid under the *pendente lite* order. Appellant contends that the judgment of divorce, which this court affirmed,[3] includes language recognizing his entitlement to such credits against the unpaid quarterly installments due under the Agreement.[4] In my opinion, these issues concerning the validity of the court's finding of arrearages due under the Agreement in light of its terms and the provisions of the divorce decree have not been litigated previously and could not have been raised earlier. The trial court did not enter an order calculating the amount due appellee under the Agreement until February 25, 1991, see *ante* at 11 n. 14, long after disposition of the prior appeal. Therefore, I cannot agree with the majority that *res judicata* principles preclude appellant from seeking review of the trial court's resolution of enforcement issues under the prior judgment and the parties' Agreement. *See Rhema Christian Center v. District of Columbia Board of Zoning Adjustment,* 515 A.2d 189, 190–93 (D.C. 1986).

However, I concur in the dismissal of the issue relating to appellant's entitlement to credits by the trial court because: (1) the order of December 3, 1990, from which the present appeal is taken, does not address or decide what amounts appellant owes appellee under the Agreement or whether appellant is entitled to credits for sums accrued or paid under the *pendente lite* order; (2) appellant did not note an appeal from the order of the trial court entered on February 25, 1991, which set the amount appel-

review than is required ultimately to overcome the privilege.... The threshold we set, in other words, need not be a stringent one. We think that the following standard strikes the correct balance. Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, "the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person" ... that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.

*United States v. Zolin, supra,* 491 U.S. at 572, 109 S.Ct. at 2631 (citations omitted).

1. *See Kleinbart v. United States,* 604 A.2d 861, 865 (D.C.1992); *see also Lehrman v. Gulf Oil Corp.,* 500 F.2d 659, 662–63 (5th Cir.1974).

2. The Agreement provides that "[t]he husband and wife each waive any and all rights he or she might now have or hereafter have to separate support and maintenance, spousal support, both periodic or lump sum, or alimony, or other applicable right to support." When a separation agreement, which is fair and reasonable, is in-

tended by the parties as a final disposition of property rights or adult support obligations, the parties will be bound by it. *Swift v. Swift,* 566 A.2d 1045, 1046 (D.C.1989).

3. *See Crane v. Crane,* Nos. 87–217 & 87–1403 (D.C. October 16, 1989).

4. There appears in the divorce decree the following statement upon which appellant relies:

Credits, if any, for *pendente lite* payments or attachments cannot be computed on the present record.

Appellant argues that affirmance of the final judgment left intact all provisions of the divorce judgment, including the foregoing language. Appellee argued in her brief in the prior case that the appeal from the *pendente lite* order should be dismissed because appellant did not argue it in his brief. In his reply brief in the earlier case, appellant maintained that the divorce judgment rendered the alimony issue moot because the court offset his compelled payments of alimony against the sums due under the Agreement.

lant owes appellee and must pay her to purge himself of contempt, *see* D.C.App.R. 4(a); and (3) the record is inadequate to resolve the issue even if it were properly before us, and it is not. *See Cobb v. Standard Drug Co.*, 453 A.2d 110, 112 (D.C. 1982).