**Catherine Ann CRANE, Appellant,**

v.

**Kent Bruce CRANE, Appellee.**

**Nos. 93–FM–545 & 93–FM–676.**

District of Columbia Court of Appeals.

Argued Dec. 16, 1994.

Decided April 27, 1995.

---

**314**

Donald T. Cheatham, Fairfax, VA, for appellant.

No appearance for appellee.

Before FERREN and KING, Associate Judges, and WEISBERG, Associate Judge of the Superior Court of the District of Columbia.*

WEISBERG, Associate Judge:

Appellant ("the wife") appeals an order of the trial court which (1) denied her motion for production and *in camera* review of certain documents alleged to be in the possession of lawyers for appellee ("the husband") and (2) granted the motion of the husband's lawyer to withdraw as counsel. She argues that the trial judge abused his discretion in ruling on both motions. We affirm.

## I. Background

This is the latest skirmish in a long-running domestic relations dispute that began in 1985 and has now spread across three continents. Much of the procedural history is set forth in our opinion disposing of the husband's appeal of a previous trial court order and need not be repeated here. *See Crane v. Crane,* 614 A.2d 935 (D.C.1992) (hereinafter *"Crane I"*).[1]

Following our decision in *Crane I,* the wife, unable to locate the husband, whose last known address is in Katmandu, Nepal, filed a motion asking the trial court to review all documents in the files of the husband's lawyer and another lawyer he allegedly retained previously, to determine whether any of these documents relate to a trust she claims the husband created on the Isle of Man. That trust, according to the wife, was used by the husband fraudulently to place beyond her reach certain assets to which she is entitled under their separation agreement and divorce decree and previous orders of the trial court. The husband did not appear below and did not respond to the wife's motion. Stephen Gray, one of the lawyers whose files were the subject of the motion, asserted in response to the wife's motion that there was no evidence of any such trust and that, in any event, he had no authority to make any representations on behalf of the husband, who had discharged him as counsel but had refused to discharge him in writing. Gray also filed a separate motion to withdraw as counsel. Charles Bruce, the other lawyer whose files the wife sought, was not a party to the proceedings and did not respond to the wife's motion. The wife filed an opposition to Gray's motion to withdraw, arguing that the motion did not comply with court rules and that granting it would be prejudicial to her efforts to satisfy her judgment. In a written order entered April 8, 1993, the trial judge denied the wife's motion for production and *in camera* review of documents and granted Gray's motion to withdraw.[2] Appellant timely noted her appeal.

---

* Sitting by designation pursuant to D.C.Code § 11–707(a) (1989).

1. This is actually the parties' third trip to this court. On October 16, 1989, in an unpublished memorandum opinion and judgment in consolidated Appeal Nos. 87–217 and 87–1403, we affirmed the judgment of absolute divorce, which validated the parties' separation agreement and granted the wife's claim for specific performance.

2. In the same order, the trial court also denied the wife's motion for a protective order. In that motion, the wife claimed that she had received a telephone call threatening her with death if she persisted in litigation against the husband. The trial court concluded that it lacked jurisdiction because the wife resided in Arlington, Virginia and there was no showing that the conduct alleged had occurred in the District of Columbia. The wife has not appealed the denial of her motion for a protective order.

## II. Appealability

■ We must first determine whether the wife's claims are properly before this court. Although the wife contends that the trial court rulings at issue are appealable under the collateral order doctrine of *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), we conclude that we have jurisdiction because the orders from which this appeal is taken are both final orders under D.C.Code § 11–721(a)(1) (1989).

■■ A *pretrial* order granting or denying discovery from a non-party witness is not ordinarily final for purposes of appeal unless, in the case of an order granting discovery, the subject of the order refuses to comply and is adjudicated in contempt. *See, e.g., Scott v. Jackson*, 596 A.2d 523, 527–28 (D.C. 1991); *United States v. Harrod*, 428 A.2d 30, 30–32 (D.C.1981) (en banc) (citing *United States v. Ryan*, 402 U.S. 530, 532–33, 91 S.Ct. 1580, 1581–82, 29 L.Ed.2d 85 (1971); *Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); *Alexander v. United States*, 201 U.S. 117, 120–22, 26 S.Ct. 356, 357–58, 50 L.Ed. 686 (1906)). Discovery orders "typically bespeak their own interloc-utory character," as they are generally issued in the context of ongoing litigation. *Scott v. Jackson*, 596 A.2d at 527 (quoting *United States v. Sciarra*, 851 F.2d 621, 627–28 (3rd Cir.1988)). Furthermore, we have declined to allow appeal of discovery orders under the narrow exception to the finality rule carved out by the Supreme Court in *Cohen*.[3] *See Scott v. Jackson*, 596 A.2d at 528–30; *Harrod*, 428 A.2d at 31–35; *cf. Horton v. United States*, 591 A.2d 1280, 1282–83 (D.C.1991).

■ However, discovery orders may be considered final and appealable where the discovery request is the only proceeding pending before the court. *See Scott v. Jackson*, 596 A.2d at 527 n. 7; *see also United States v. Sciarra*, 851 F.2d at 628–29; 8 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2006, at 76–77 (2d ed. 1994).[4] This category includes orders relating to discovery in aid of execution on a judgment. *See* 8 WRIGHT ET AL., *supra*, § 2006, at 76–78 & n. 4. While orders granting discovery in aid of execution have generally been held not appealable,[5] appeal has

---

3. The doctrine provides for appeal of orders which, although not final, (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) would be effectively unreviewable on appeal from a final judgment. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457–58, 57 L.Ed.2d 351 (1978); *Cohen*, 337 U.S. at 546–47, 69 S.Ct. at 1225–26. We need not decide whether the orders from which the wife appeals would fit within this category were they not final appealable orders under D.C.Code § 11–721(a)(1).

4. 28 U.S.C. § 1291 (1988), conferring appellate jurisdiction to review "final decisions of the district courts," differs slightly from D.C.Code § 11–721(a)(1) (1989), conferring appellate jurisdiction to review "final orders and judgments of the Superior Court." However, we have previously noted that the two provisions are sufficiently similar in language and purpose that caselaw interpreting the federal statute may be taken as persuasive authority in interpreting the local statute. *See Scott v. Jackson*, 596 A.2d at 527 n. 6; *Harrod*, 428 A.2d at 31 n. 1.

5. The reason usually offered for disallowing appeal of post-judgment orders *granting* discovery is that the alternative route to appellate review is available if the party ordered to provide discovery refuses and is sentenced for contempt. For that reason, in *Crane I* we dismissed the husband's appeal of the trial court's post-judgment order authorizing the wife to subpoena Mr. Bruce, holding that the order was not appealable by the husband, and would be appealable by Mr. Bruce only if he were served with the subpoena, refused to comply and was sentenced for contempt. 614 A.2d at 939–40. *See also Central States, Southeast & Southwest Areas Pension Fund v. Express Freight Lines, Inc.*, 971 F.2d 5, 6 (7th Cir.1992); *Richmark Corp. v. Timber Falling Consultants, Inc.*, 937 F.2d 1444, 1449 (9th Cir. 1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 295, 121 L.Ed.2d 219 (1992); *Rouse Constr. Int'l, Inc. v. Rouse Constr. Corp.*, 680 F.2d 743, 745–46 (11th Cir.1982). *But see First Fed. Sav. & Loan Ass'n v. Fisher*, 544 F.2d 902, 902 n. 2 (5th Cir.1977) (assuming, without deciding, that order permitting post-judgment discovery in aid of execution was appealable). Some courts have offered a second reason: orders granting discovery in aid of execution are usually followed by collection by the judgment creditor, resulting in another judgment from which the judgment debtor can appeal the discovery order. *See Central States*, 971 F.2d at 6; *Rouse*, 680 F.2d at 746. Orders *denying* post-judgment discovery are quite different, because contempt is not an option, and in most cases there will be no future final judgment with which to bring the discovery issue before the appellate court.

been allowed from orders denying discovery in aid of execution. *See Central States,* 971 F.2d at 6; *Wilkinson v. FBI,* 922 F.2d 555, 558 (9th Cir.1991); *Fehlhaber v. Fehlhaber,* 664 F.2d 260, 262 (11th Cir.1981); *United States v. McWhirter,* 376 F.2d 102, 104–05 (5th Cir.1967).[6] The order denying production and *in camera* inspection of documents from which the wife appeals in this case is a post-judgment order denying discovery in aid of execution. There is no underlying litigation that would be disrupted by the appeal, and if we were to hold that the order is not appealable at this time, it would effectively deny the aggrieved party appellate review at any time. We hold, therefore, that the trial court's order denying discovery is a final appealable order.

 Similar concerns compel the same result with respect to the post-judgment order granting attorney Gray's motion to withdraw as counsel for the husband. "Piecemeal review, against which the rule of finality is aimed, is not as decisive a consideration after judgment as before judgment." *Joseph F. Hughes & Co. v. United Plumbing & Heating, Inc.,* 390 F.2d 629, 630 (6th Cir.1968); *accord Plymouth Mutual Life Ins. Co. v. Illinois Mid–Continent Life Ins. Co.,* 378 F.2d 389, 391 (3d Cir.1967). Thus, most post-judgment orders are appealable "as long as the [trial] court has completely disposed of the matter." *Ohntrup v. Firearms Ctr., Inc.,* 802 F.2d 676, 678 (3d Cir.1986) (quoting

*Sportmart, Inc. v. Wolverine World Wide, Inc.,* 601 F.2d 313, 316 (7th Cir.1979)); *accord* 15B WRIGHT ET AL., *supra,* § 3916, at 351 (2d ed. 1992). While a pretrial order granting a motion to withdraw as counsel has been held not final or appealable, *see Eckles v. Furth,* 557 F.2d 953, 956 (2d Cir.1977), appeal has been allowed from a post-judgment order denying a motion to withdraw, even where discovery in aid of execution was pending. *See Ohntrup,* 802 F.2d at 678.[7] Accordingly, we hold that the trial court's order granting attorney Gray's motion to withdraw is appealable as a final order.[8]

## III. The Discovery Order

 The wife contends that our September 29, 1992, disposition of the earlier appeal taken by the husband required the trial court to undertake an in camera inspection of the files of Stephen Gray and Charles Bruce in order to "inquire thoroughly in regards to any knowledge that ex-husband's counsel might possess in regard to ex-husband's secretion of substantial assets from this jurisdiction." We believe the trial court, having correctly determined that the husband had informally discharged Gray as his lawyer and that Gray should be permitted formally to withdraw, was correct in concluding that it lacked authority to order an *in camera* inspection of documents in the control of persons who were not parties to the proceeding.

6. Although the court in *McWhirter* characterized the discovery order in question as a final judgment for purposes of 28 U.S.C. § 1291, it appears to have analyzed the jurisdictional issue primarily under the collateral order doctrine of *Cohen.* We believe, however, that the discovery order here is more aptly characterized as a final order without regard to the *Cohen* exception.

7. Orders granting or denying motions to withdraw as counsel are to be distinguished from orders *granting* or *denying* motions to disqualify opposing counsel, which generally arise before trial and have been held not to be appealable orders. *See In Re Estate of Chuong,* 623 A.2d 1154, 1157–58 (D.C.1993) (en banc) (pretrial order disqualifying counsel in civil case not appealable under *Cohen* collateral order doctrine); *Richardson–Merrell Inc. v. Koller,* 472 U.S. 424, 440, 105 S.Ct. 2757, 2766, 86 L.Ed.2d 340 (1985) (pretrial order disqualifying counsel in civil case not appealable); *Flanagan v. United States,* 465 U.S. 259, 269, 104 S.Ct. 1051, 1057, 79 L.Ed.2d

288 (1984) (pretrial order disqualifying counsel in criminal case not appealable); *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 377–78, 101 S.Ct. 669, 675–76, 66 L.Ed.2d 571 (1981) (pretrial order denying motion to disqualify counsel in civil case not appealable). *But see In Re Investigation Before April 1975 Grand Jury,* 174 U.S.App.D.C. 268, 273 n. 8, 531 F.2d 600, 605 n. 8 (1976) (decided before *Firestone,* order granting motion to disqualify counsel representing multiple witnesses before grand jury appealable).

8. Although we hold that the order granting attorney Gray's motion to withdraw is appealable as a final order, appellant's reliance on *Urciolo v. Urciolo,* 449 A.2d 287 (D.C.1982), and *American Archives' Counsel v. Bittenbender,* 345 A.2d 487, 490 (D.C.1975), is misplaced. Those decisions were premised on the collateral order doctrine, and they were expressly overruled in *Estate of Chuong,* 623 A.2d at 1157.

Assuming such documents exist, the proper way to obtain them from Mr. Bruce and Mr. Gray is by a subpoena duces tecum.[9] If the person subpoenaed to produce documents resists production by claiming that the documents are privileged,[10] the court may *then* order an *in camera* inspection of the documents in dispute and quash the subpoena with respect to any documents protected by a valid privilege.[11] The court may of course enforce a subpoena by contempt.

At an earlier proceeding in this case, the trial court had issued an order authorizing the wife's counsel to serve Mr. Bruce with a subpoena duces tecum and to depose him with reference to the creation of the alleged trust on the Isle of Man. For reasons that do not appear in the record, that subpoena was never served. Instead, the wife attempted to circumvent the rules by asking the trial court to (1) compel both Mr. Bruce

and Mr. Gray, for whom a subpoena duces tecum had not even been authorized, much less served, to produce documents and (2) conduct an *in camera* inspection of any documents produced. The trial court correctly declined to issue such an order.[12]

Even if the trial court could be said to have had discretion to circumvent the court's discovery rules in the interest of expediting the wife's quest for satisfaction of her judgment, we would not say that the denial of the wife's motion was an abuse of that discretion. *See Plough v. National Academy of Sciences,* 530 A.2d 1152, 1156 (D.C.1987) (decision to allow discovery is left to sound discretion of trial court and will not be disturbed on appeal absent abuse of discretion). Assuming again that the putative documents exist, it was certainly reasonable for the trial court to insist on a subpoena so that the issue of the attorney-client privilege, *vel non,* could be

9. In her motion to compel discovery, the wife relied on Super.Ct.Dom.Rel.R. 69–I, entitled "Attachment after judgment in general," which provides that the discovery procedures authorized by Rules 26 through 37 are available to judgment creditors as set out in those rules, with the exception that "a subpoena ad testificandum addressed to a person other than the judgment debtor and a subpoena duces tecum shall issue only upon order of the court." None of these rules authorizes the court to compel a person who is not a party to produce documents *without* the issuance of a subpoena. Super.Ct.Dom.Rel.R. 34(c), the discovery rule regarding document production, provides that a party may compel a non-party to produce documents by issuance of a subpoena in accordance with Rule 45. *See also In Re Herndon,* 596 A.2d 592, 595 (D.C.1991) ("If a party seeks to obtain documents from one who is not a party to the suit ... he must obtain a subpoena duces tecum against the person who has the documents.").

10. Super.Ct.Dom.Rel.R. 45(c)(2)(B) provides that if a person commanded to produce documents objects to production, the party serving the subpoena shall not be entitled to inspect and copy the materials except pursuant to a court order. The rule further provides that if objection has been made, the party serving the subpoena may move for an order to compel the production upon notice to the objecting person. Rule 45(d)(2) provides that when information subject to a subpoena is withheld on a claim that it is privileged, the claim must be made "expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim."

11. Super.Ct.Dom.Rel.R. 45(c)(3)(A)(iii).

12. Contrary to the wife's assertion, nothing in *Crane I* directed the trial court to inspect the files of either Stephen Gray or Charles Bruce. That decision merely dismissed the husband's appeal for lack of jurisdiction. Indeed, the opinion noted that a subpoena for Mr. Bruce apparently had not been issued, and we made it clear that "[w]e cannot consider that question [of whether the information in Mr. Bruce's files is privileged] unless Mr. Bruce fails to comply with the subpoena and the trial court then imposes a contempt sanction on him." *Crane I,* 614 A.2d at 940. While it is true that Judge Terry's concurring opinion suggested that "[i]f the wife cannot make the necessary [prima facie] showing [to defeat the attorney-client privilege] without the subpoenaed documents, the court may—either *sua sponte* or on the wife's motion—conduct an *in camera* examination of any documents pertaining to the alleged Manx trust," *id.* at 941 (Terry, J., concurring), the unstated premise of that suggestion was that the documents had been subpoenaed and the witness had resisted production of documents based on the attorney-client privilege.

The only other authority cited by the wife also does not support her position. In *Alpern v. Frishman,* 465 A.2d 828 (D.C.1983), we affirmed the trial court's denial of a motion by a judgment creditor for an order compelling further testimony from the wife of the judgment debtor, who had refused to answer certain questions when she appeared for deposition and produced documents *pursuant to subpoena.*

decided in an adversarial proceeding in which the party asserting the privilege had an opportunity to be heard before production of documents arguably covered by the privilege.

## IV. The Order Granting Leave to Withdraw

■ The wife argues that the trial court should not have allowed Mr. Gray to withdraw without ascertaining whether he and Charles Bruce, who was once associated with Gray's law firm,[13] assisted the husband in hiding assets from the wife. We disagree.

■ The decision to grant or deny a motion by an attorney to withdraw as counsel is committed to the discretion of the trial court. *See Atlantic Petroleum Corp. v. Jackson Oil Co.,* 572 A.2d 469, 474 (D.C.1990). In his motion Gray represented that he had moved to his firm's London office in June of 1991 and could not continue to represent the husband from there; that the husband had discharged him, but had refused to put the discharge in writing; that he could no longer afford to represent the husband, who owed his firm more than $23,000 in unpaid legal fees; that no one in his firm's Washington, D.C. office was available to represent the husband because that office no longer handled domestic relations litigation; that he had done nothing to circumvent any court order; and that there were no unanswered

discovery requests directed to the husband's counsel.

■ Pursuant to Rules 1.16(b)(3) and 1.16(b)(4) of the District of Columbia Rules of Professional Conduct, an attorney may withdraw from representing a client if "[t]he client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled," or if "[t]he representation will result in an unreasonable financial burden on the lawyer or obdurate or vexatious conduct on the part of the client has rendered the representation unreasonably difficult." Where a client refuses to communicate with his attorney and makes no arrangements to pay the attorney for past services, the attorney's motion to withdraw will ordinarily be granted. *See Hancock v. Mutual of Omaha Ins. Co.,* 472 A.2d 867, 869 (D.C. 1984). *See also Hammond v. T.J. Little & Co.,* 809 F.Supp. 156, 162–63 (D.Mass.1992).

■ Furthermore, the wife is not unduly prejudiced by Gray's withdrawal.[14] No pending trial or other scheduled court proceeding is imperiled and, unless and until the husband arranges for substitute counsel, the wife can rightfully assume he has elected to proceed *in propria persona.*[15] If the wife

---

**13.** The wife does not claim that Mr. Bruce was associated with Mr. Gray's firm, Oppenheimer, Wolff & Donnelly, at the time of the creation of the alleged trust, and the record reflects that he was no longer a member of the law firm at the time the trial court granted Gray's motion to withdraw.

**14.** Understandably, the court rules and most of the case law in this area focus on prejudice to the *client* when motions to withdraw as counsel are improvidently granted. Nevertheless, fairness to the opposing party is not irrelevant in deciding whether a motion to withdraw should be granted. We can envision a situation where prejudice to the opposing party might constitute grounds for the denial of an otherwise meritorious motion to withdraw—for example, where granting the motion would necessitate a continuance of a trial or other court proceeding, the delay of which would be unfair to the opposing party. *Cf. Atlantic Petroleum Corp. v. Jackson Oil Co.,* 572 A.2d 469 (D.C.1990). Indeed, it is not unheard of in today's practice for an attorney to collude with a client in filing a motion to withdraw as a delaying tactic to assist the client in obtaining an

unwarranted continuance. In the present case, however, these factors do not weigh heavily, and fairness to Mr. Gray, if not to the husband, was the paramount consideration.

**15.** The wife also argues that Stephen Gray's motion to withdraw did not comply with Super.Ct.Dom.Rel.R. 101(c) because it did not list a sufficient last known address for the husband. Rule 101(c)(2) provides that unless the client is represented by new counsel or the motion is made in open court in the client's presence, a motion by any attorney to withdraw must be accompanied by a certificate listing the client's last known address and stating that the attorney has served the client with a copy of the motion and advised the client to obtain new counsel or to notify the Clerk if he or she intends to proceed *in propria persona* or to object to the withdrawal. The primary purpose of these requirements is to provide assurance that the client received notice of the attorney's intent to withdraw, not to let the other side know where the client currently resides. In any event, Mr. Gray certified in his motion that he sent the motion to the husband at

has a legitimate claim that Mr. Gray or members of his law firm assisted the husband in perpetrating a fraud by creating a bogus extra-territorial trust with marital property owed to her, she can prosecute that claim just as effectively, if not more effectively, with Gray no longer acting as the husband's lawyer. To the extent that the wife's search for the husband's assets may be frustrated by an assertion of the attorney-client privilege, both Mr. Gray and Mr. Bruce (if, indeed, Mr. Bruce ever acted as the husband's lawyer, an issue we do not decide) are under a continuing duty to assert the privilege on any matters as to which they have a good faith belief that the privilege pertains, and their obligation to assert the privilege on the husband's behalf does not evaporate now that Gray no longer represents the husband in

this proceeding. District of Columbia Rules of Professional Conduct 1.6(a)(1), 1.6(f). In any event, neither Mr. Bruce nor Mr. Gray has been called upon to assert the privilege because neither has been subpoenaed by the wife. Under these circumstances, the trial court did not abuse its discretion in granting Gray's motion to withdraw.

For the foregoing reasons, the orders of the trial court are hereby

*Affirmed.*

his last known address, "c/o KMTNC, Kathmandu, Nepal." This represents substantial compliance with Rule 101 and, under the circumstances here, nothing more was required.